**Luis L. CERVANTES, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 16681.**

United States Court of Appeals
Ninth Circuit.

April 8, 1960.

See also 174 F.Supp. 398.

———◆———

Willis D. Hannawalt, San Francisco, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Elmer Enstrom, Jr., Asst. U. S. Atty., San Diego, Cal., Robert John Jensen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before BONE, POPE and HAMLEY, Circuit Judges.

HAMLEY, Circuit Judge.

Luis L. Cervantes appeals from his conviction on the first two counts of a three-count indictment charging violations of the narcotic laws.[1] This is the second time Cervantes has been convicted under this indictment. As a result of a previous trial Cervantes was convicted on all three counts. However, on appeal we reversed and remanded with directions which led to the granting of a new trial. Cervantes v. United States, 9 Cir., 263 F.2d 800.

The single question presented on the previous appeal was whether exhibits consisting of narcotics and a hypodermic syringe should have been excluded as having been obtained by means of an unreasonable search and seizure, contrary to the Fourth Amendment. These articles were found in Cervantes' automobile on the evening of December 8, 1955, when he was stopped on the highway by a customs inspector at San Clemente, California.

█ Since the officer who stopped Cervantes did not have a warrant for his arrest or search, the reasonableness of the search and seizure depended upon a showing of probable cause. Carroll v. United States, 267 U.S. 132, 155–156, 45 S.Ct. 280, 69 L.Ed. 543. The burden of making such a showing is upon the government. Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556. We determined on the earlier appeal that the government had not maintained this burden, and that under the doctrine of Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, the evidence should have been excluded. Our direction on remand was to grant Cervantes a new trial or, in the discretion of the trial court, to dismiss the action.[2]

Following the remand Cervantes moved in the district court for dismissal of the action and in the alternative for transferal of the cause to another department of the district court. Both motions were denied. Cervantes then moved, prior to trial and in the manner provided in Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A., to suppress the evidence to which reference has been made. This motion was also denied. United States v. Cervantes, D.C., 174 F.Supp. 398. All subsequent motions and objections made during the trial in an effort to exclude this evidence were likewise denied or overruled.

On this appeal Cervantes contends that the trial court erred in denying the motion to suppress and in admitting the evidence over his objection. Several arguments are made in support of this contention, one being that the government did not maintain its burden of proving that the officer who ordered the search

---

1. Count one of the indictment charged knowing importation of 200 grains of heroin on December 8, 1955, contrary to 21 U.S.C.A. § 173. Count two charged knowing and unlawful reception, concealment and transportation, and facilitation of concealment and transportation of the same heroin on December 8, 1955, contrary to the same statute. Count three charged knowing and wilful smuggling and clandestine introduction into the United States from Mexico, on December 8, 1955, of approximately 33 marihuana seeds, without presenting the same for inspection, invoicing and declaration, all with intent to defraud the United States, contrary to 19 U.S.C.A. §§ 1461, 1484, 1485.

2. We need not decide whether under other circumstances the proper disposition would have been to order dismissal. No motion under Rule 41(e), Federal Rules of Criminal Procedure, 18 U.S.C.A., to suppress this evidence was made prior to the first trial, but was made during the course of that trial. The government was thus called upon to make its showing as to probable cause without advance notice that such an issue would be raised. Under these circumstances it seemed appropriate to permit the government to reopen the question and present additional evidence as to probable cause at a new trial if, in the discretion of the trial court, a new trial rather than dismissal should be granted. It was perhaps this circumstance which led Cervantes on the prior appeal to seek a new trial rather than dismissal of the prosecution.

and seizure had probable cause for so doing.

■ As indicated by what has been said above, this is the precise question which was before us on the first appeal. Our previous holding that the government did not maintain its burden of proving probable cause became the law of the case in so far as the evidence then before us is concerned. If, therefore, the evidence was the same at the second trial as it was at the first, the law announced in our prior decision should have caused the trial court to exclude the evidence and does require us to reverse. See City of Seattle v. Puget Sound Power & Light Co., 9 Cir., 15 F.2d 794, 795, discussing the rule of the law of the case.

The order to search Cervantes' automobile was given by Kenneth Grant, a federal customs inspector. The fact which the government had to establish was that on or before December 8, 1955, when he gave that order, Grant had probable cause to believe that Cervantes would be transporting narcotics in his automobile on that day. Based on the evidence produced at the first trial, we held on the prior appeal that Grant did not have personal knowledge or knowledge through an informant which would warrant the belief that Cervantes was transporting narcotics on December 8, 1955.[3]

On the motion to suppress which preceded the second trial the government did not produce any substantial additional evidence as to Grant's personal knowledge. As to information received by Grant from an informant, however, the government did produce one item of additional evidence. In order to make clear the respect in which this new evidence was additional to that originally produced, it is first necessary to describe the original evidence and our treatment of it. We do so in the words of our first opinion. (263 F.2d 804):

"The only information Grant received as to Cervantes' possible narcotics activities was that which came

to him on September 27, 1955. He was told that on that date a man answering Cervantes' description was in Tijuana to buy narcotics, and was in contact with Manuel Vargas, known to Grant as a narcotics vendor. The only information thereafter given to Grant was that communicated on October 28, 1955. This information was that Cervantes was again in Tijuana, and that a corrected license number had been ascertained. Grant was not told that Cervantes had come to Tijuana on October 28 to purchase narcotics, or that he was or had been in contact on that date with Vargas or any other narcotics vendor.

"The fact that Cervantes may have purchased narcotics in Tijuana on September 27, 1955, for importation into this country does not tend to prove that his presence in Tijuana ten weeks later must have been for the same purpose. Thus, assuming that Grant had reason to place reliance upon the information supplied by his informant, we do not believe that it would warrant a man of reasonable caution in believing that Cervantes must have been illegally transporting narcotics when he entered the United States from Mexico on December 8, 1955."

It will be noted that our holding was to the effect that the information received by Grant on September 27 and October 28, 1955, did not warrant the belief that Cervantes was transporting narcotics on December 8, 1955. The additional item of evidence concerning the information received by Grant from an informant, produced on the remand, was designed to supply this factor of timeliness which we found lacking in the prior record.

It consisted of testimony by Grant to the effect that he was told by his informant on September 27, 1955, that Vargas had told the informant that Cervantes "was coming quite frequently,

3. We did not reach the question of whether a sufficient showing had been made as to the trustworthiness of the informant.

probably about once a week from Los Angeles to Tijuana." Grant also indicated that he was informed that the purpose of the trips was to purchase marihuana. Grant testified that the informant told him that Vargas "often * * * bragged about this customer [presumably Cervantes] getting large quantities of marihuana and after every trip he [presumably Vargas] would be in funds." Grant also testified that the informant told him that he obtained the information concerning the frequency of Cervantes' trips from observation "and from Vargas' talking when he was drunk that this man was making regular, frequent trips."

The information given Grant by his informant, that Cervantes was making regular, frequent trips to see Vargas in Tijuana, was not confirmed by any personal knowledge which Grant subsequently obtained, or any information received from his informant. Grant personally observed Cervantes in Tijuana on two later occasions—October 28 and December 8, 1955. This does not indicate either frequency or regularity.

Moreover, Grant obtained no information that Cervantes saw Vargas on either of those occasions. While Grant was told that Cervantes had come down to Tijuana on October 28 to see Vargas, Grant testified that he knew for a fact that Vargas was not in Tijuana on that day. Vargas was actually in Mexico City for an operation. Grant also believed that Vargas was in a hospital on December 8, 1955.

■ In our opinion the additional testimony given by Grant, as summarized above, does not supply the element of timeliness which was lacking with respect to information received by Grant from his informant, as testified to at the first trial. The informant's statement to Grant concerning contacts between Cervantes and Vargas spoke as of September 27, 1955. The search and seizure was made on December 8, 1955.

Grant had neither personal knowledge nor word from his informant that Cervantes had been in contact with Vargas on December 8, 1955, or on any day since September 27, 1955. Grant himself believed that Vargas was in a hospital on December 8. He knew that Vargas was not in Tijuana on October 28, 1955, the only other time after September 27, 1955, when Cervantes was known to be in Tijuana.

Information received from the informant on September 27, that Cervantes had been making regular and frequent trips to Mexico for narcotics, might have warranted a search and seizure on or about that date without a warrant. It may also have given rise to a strong suspicion that this was the purpose of Cervantes' December 8 trip. Thus a thorough search at the border on that day or careful surveillance after entry into the United States would have been warranted. But we are not advised of any case where an informant's statement that past criminal activity has been regular and frequent has been held to establish probable cause for a search and seizure ten weeks later. Compare Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, where it was held that an informant's prediction on September 7, that a named individual would be transporting narcotics on September 8 or 9, established probable cause for a search and seizure on the latter date.

■ We hold that the government has again failed to maintain its burden of proving that on or about December 8, 1955, Grant had reasonable cause to believe that Cervantes was transporting narcotics in his automobile on December 8, 1955. The fact that he was actually found to have been transporting narcotics on that day is immaterial. A search is not to be made legal by what it turns up. United States v. Di Re, 332 U.S. 581, 595, 68 S.Ct. 222, 92 L.Ed. 210.[4]

Reversed with directions to dismiss the action.

---

4. As on the first appeal, we do not reach the question as to the trustworthiness of Grant's informant.