**Luis Sanchez PLAZOLA, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 17132.**

United States Court of Appeals
Ninth Circuit.

April 4, 1961.

Mary E. Harvey and Harry D. Steward, San Diego, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Thomas R. Sheridan, Asst. U. S. Atty., Los Angeles, Cal., and Paul Hofflund, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES, JERTBERG and KOELSCH, Circuit Judges.

BARNES, Circuit Judge.

Appellant was charged in Count I with unlawfully importing and bringing into the United States from Mexico fifty-eight pounds of marijuana on January 20, 1960, contrary to Title 21 U.S.C.A. § 176a. Count II charged a violation of the same act on the same date with respect to the same amount of marijuana brought from Mexico by concealing and facilitating transportation thereof. Appellant was sentenced to fifteen years imprisonment on each count, the sentences to run concurrently.

A motion to suppress the fifty-eight pounds of marijuana allegedly illegally obtained as evidence was made and denied below.

Appellant urges five grounds for reversal:

(1) The stopping of his car, his arrest, and the search of his car, were without warrant or probable cause, and hence violative of the Fourth Amendment.

(2) The motion to suppress the fifty-eight pounds of marijuana found in the car of codefendant Singh should have been granted.

(3) The government should have been required to elect between prosecuting appellant for possession and transportation of the one seed of marijuana in his vehicle (a Dodge) or the fifty-eight pounds of marijuana found in Singh's vehicle (a Mercury).

(4) Appellant was prejudiced by the court's calling of codefendants as the court's witnesses, and by the court's reading of the codefendant Singh's presentence report out of defendant's presence.

(5) The court erred in admitting hearsay testimony of a customs officer.

Appellant's car was stopped by two United States Customs Agents some fifty or sixty miles north of the Mexican border, at 11:30 A.M. on January 20, 1960, after it had crossed the border at Calexico, California, about 9:30 A.M. on that

same day,[1] and had been followed by customs agents to the point where it was stopped.

Appellant had no record of any conviction, either for a narcotics offense or otherwise. He had been stopped and searched many times at the border, but never had any narcotics or other prohibited articles been found on his person or in his vehicle.

The Customs Service received information appellant had been hiring other persons to smuggle marijuana into the United States from Mexico. The source, authenticity and reliability of this information was not gone into by the government at the trial. Appellant had "been under investigation by the Customs Agency Service since March 1959." On the day in question, no specific or general information had come to the Customs Service with respect to appellant's recent activities in Mexico. The arresting officer "had received no prior information with respect to this particular transaction" with which appellant was here charged. Was this "probable cause," i. e., "a reasonable ground for belief of guilt"? Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 288, 69 L.Ed. 543; Rodgers v. United States, 9 Cir., 1959, 267 F.2d 79.

Alleged unusual behavior in the operation of appellant's auto was a second factor urged by the government as sufficient to constitute reasonable grounds for stopping of appellant's vehicle, and the arrest of appellant. The unusual behavior was: (a) that appellant twice reversed his direction of travel after entering the United States, making two consecutive U-turns; (b) that codefendant Singh's car passed Agent Scott (who was following appellant's car) at a high speed; (c) Singh's car slowed down behind appellant's car; (d) Singh's car moved to a passing position alongside appellant's vehicle for about ten seconds; (e) Singh then dropped behind appel-

lant's vehicle, and (f) followed appellant's vehicle into Brawley (about five miles) at a reduced speed; (g) appellant's car stopped in Brawley, the other car slowed; (h) appellant's Dodge thereafter caught up with the Mercury (Singh's car), and (i) they proceeded together further north on Highway 99. When they were severally stopped, the two cars were about two miles apart.

Appellee concedes that the arrest was made without a warrant by three agents (Hann, Ellis and Scott) of the United States Customs Service. Their power to arrest, at least since 1956, arises from 26 U.S.C. § 7607, which provides in part:

"* * * officers of the customs * * * may * * * make arrests without warrant for violations of any law of the United States relating to narcotic drugs * * * or marijuana * * * where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

It is conceded that here there was *no warrant* obtained for the appellant's arrest. It is undisputed no violation of law relating to narcotic drugs was taking place *in the presence* of the officers when appellant's vehicle was stopped. The government thus must rely on probable cause, i. e., that its agents, the customs officers, had reasonable grounds to believe the appellant had committed or was committing a violation of the narcotics laws. "The burden of making such a showing is upon the government." Cervantes v. United States, 9 Cir., 1960, 278 F.2d 350, 351, citing Wrightson v. United States, 95 U.S.App.D.C. 390, 222 F.2d 556.

■ While there undoubtedly was in the minds of the customs officers a general belief that appellant had in the past smuggled marijuana into the United

---

1. Appellant's car was stopped at the border; appellant was questioned. He was not searched. ("Q. Did you search the car at that time? A. No, sir, I did not." Tr. p. 43.)

States largely through the use of confederates rather than carrying it personally, or within his own vehicles or on his person, we do not believe such a general belief as to past actions, unrelated to present conduct, or additional reliable information, would constitute more than suspicion that the suspect was likely to do it again. If we were to interpret the statute as the government suggests, once a general belief had been established in the minds of a customs officer that a suspect had in the past violated a narcotics law and might be doing it again, then that suspect could always in the future be arrested, irrespective of any then present act or violation of law, without the necessity of a warrant ever being obtained; no matter how, when, or where the arrest might take place, and irrespective of any conduct then observed, or any information—confidential or otherwise— that the narcotics laws were then being violated. Had this been intended, the Congress might better have merely enunciated the rule: "A customs officer needs no warrant—he may arrest anywhere at any time any person whom he reasonably believes at some time in the past has violated the narcotics laws, and might do it again." We do not believe such an interpretation or result was envisaged by the Congress. We reject any such theory as being contrary to the purpose of the provisions of the Fourth Amendment.

We then must consider, if we do not read the *belief* of a past violation as good cause for a present belief, whether there existed reasonable grounds for good faith belief that appellant was then violating the narcotic drugs act. And the word "then" emphasizes the importance, in addition to the necessary "how" of a violation, of the time and place of any arrest. The "where" is undisputed— fifty to sixty miles north of the border. The "when" in point of time was at least two hours after the border crossing. The precise time awaits a determination of whether the arrest took place (a) when the appellant's car was first stopped, or (b) after the customs officers left the scene where appellant's Dodge was stopped (requiring the appellant to accompany them two miles, in the officers' car, to where Singh's Mercury had been stopped); or after all had returned together to the site of the original stopping after a search of Singh's car revealed the marijuana, or after Singh had allegedly implicated appellant as the "owner" of the marijuana. It was only then that the government concedes that "a formal arrest" took place. We are not certain exactly what "a formal arrest" means. Appellant contends he was under arrest as of the time the government vehicle sounded its siren and stopped appellant's vehicle.

Whether we agree with appellant's precise position (that his arrest was consummated when he was stopped) need not now be determined.

As it was stated by the Supreme Court in Henry v. United States, 1959, 361 U.S. 98, at pages 103–104, 80 S.Ct. 168, at page 171, 4 L.Ed.2d 134:

> "When the officers interrupted the two men and restricted their liberty of movement, the arrest, for the purposes of this case, was complete. It is, therefore, necessary to determine whether at or before that time they had reasonable cause to believe that a crime had been committed. The fact that afterwards contraband was discovered is not enough.
>
> *    *    *    *    *    *
>
> "What transpired at or after the time the car was stopped by the officers is, as we have said, irrelevant to the narrow issue before us. To repeat, an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen."

There may be a difference between the extent of the authority of a customs officer to stop a car at the border as a necessary part of a customs search, and the ordinary power of a peace officer to stop and search, but we think there can be no difference under either factual circumstance as to when an arrest takes place.

■ Again, we concede there may be a difference of opinion as to whether an arrest takes place when a siren is sounded, or at the instant a car is stopped, or not until there exists a restraint on the individual's liberty of movement. But we believe there can be no doubt that when a car is stopped, the occupant required to get out, then required to leave his vehicle to get into an officer's car and be transported to another spot located two miles away, being interrogated meanwhile, being required to await a search of another's vehicle, and being brought back to his own vehicle, his liberty of movement has been sufficiently restricted to constitute an arrest. The arrest is then "complete," in the words of Henry v. United States, supra. Cf. People v. Randolph, 1957, 147 Cal.App. 2d 836, 841, 306 P.2d 98; Wilson v. Superior Court, 1956, 46 Cal.2d 291, 294 P.2d 36; People v. Martin, 45 Cal.2d 755, 290 P.2d 855.

> "If officers do not have probable cause to arrest or search, their restraint of another's freedom of locomotion by words, acts, or the like, which would induce a reasonable apprehension that force would be used unless he submitted, constitutes an arrest. To constitute an arrest, it is not necessary to touch the person of one who is arrested, or to state to him that he is arrested." Gilliam v. United States, 6 Cir., 1951, 189 F.2d 321 at page 327.

Taking this view of what constitutes an arrest, we cannot rely on evidence discovered after the arrest to bolster the reasonable grounds required to be in the possession and minds of the customs officers prior to the arrest. "An arrest is not justified by what the subsequent search discloses." Henry v. United States, supra; Murgia v. United States, 9 Cir., 1960, 285 F.2d 14.

This eliminates the incriminatory statements of Singh relating to the ownership of the fifty-eight pounds of marijuana found in his car, and the fact that one seed was found in the subsequent search of the appellant's Dodge. What do we have left? The suspicious circumstances of the manner in which the Dodge was being driven, and the general belief of the officers that the appellant at some times in the past had used others to smuggle marijuana across the border.

■■ The driving maneuvers, related *in extenso, supra,* are, with the possible exceptions of the double U-turn, as compatible with "horseplay," or as legitimate efforts of two friends driving two autos back from a trip to Mexico to communicate with each other—as they are with sinister and unlawful actions. Suppose Plazola started ahead of Singh, and the latter agreed to catch up with appellant. That would explain their speed. Suppose Plazola wanted to advise Singh he would stop for some reason in Westmoreland, and catch up to him later, to continue the joint journey. Such a purpose could readily explain all the changes in speed, and the change in order, of the two vehicles, and the stop of the one. Suspicion, or even "strong reason to suspect," is not adequate for a warrant, or for an arrest, or for a search, except at the border. All that remains is the strange circumstance of the double U-turn. That might well indicate, particularly to a peace officer, that the man he was "tailing" was suspicious that he was being followed. But an innocent driver might conceivably have twice changed his mind as to the direction in which he would proceed on his way home from Mexico.

■ As to the probable cause relied on by the officers, there was no attempt made herein to justify by evidence any proof of the reliability of any informant as to what the customs officers knew of appellant's past conduct. The burden to establish the grounds for the good faith belief of probable cause is on the government. Brinegar v. United States, 1949, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879; Cervantes v. United States, 9 Cir., 1959, 263 F.2d 800; Hamer v. United States, 9 Cir., 1958, 259 F.2d 274.

In Cervantes, at least the informant was described, as was the specific infor-

mation received. Neither of these matters were touched on herein below. Nor was there any confirmation of information confidentially supplied, as in Draper v. United States, 1959, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

■ We hold this was not a "border search" that can lawfully be based on mere suspicion;[2] that there was no evidence presented to the officers by their senses sufficient to justify them in the good faith belief that appellant was then violating the narcotics laws, or had violated them *that day* in crossing the border; that the arrest took place when the officers required the appellant to leave his auto and proceed to another point; that this arrest without a warrant was without probable cause,[3] and was illegal, and the evidence obtained thereby was not admissible and should have been suppressed.

Each of the two counts charge appellant wtih reference to the fifty-eight pounds of marijuana. The government says it cannot be held to the exact amount mentioned in the indictment. That is correct. But was the one seed *ever* a part of any marijuana mentioned in either indictment? There is no evidence to tie it in. The court below very properly sought to have counsel agree on a special verdict for the jury to return so that the court and counsel could know whether the jury verdict, if it found the appellant guilty, was based on the importation or concealment (a) of the fifty-eight pounds of marijuana partially discovered in the search of Singh's Mercury, or (b) of the one marijuana seed discovered in the subsequent search of appellant's Dodge, or (c) both.

But neither government counsel nor defense counsel would agree that the special verdict proposed by the court could be presented to the jury. The court therefore assumed the burden of attempting to assure there would be a unanimous verdict as to one of the three factual issues outlined above.[4] We think he accomplished this, but we have no knowledge, nor did he, as to which of the three factual alternatives the jury unanimously agreed upon. Did the jury

2. 19 U.S.C.A. § 482. Carroll v. United States, 1925, 267 U.S. 132, 153, 162, 45 S.Ct. 280, 69 L.Ed. 543; Cervantes v. United States, 9 Cir., 1959, 263 F.2d 800; Witt v. United States, 9 Cir., 1961, 287 F.2d 389; Murgia v. United States, 9 Cir., 1960, 285 F.2d 14; Landau v. United States, 2 Cir., 1936, 82 F.2d 285, 286; United States v. Yee Ngee How, D.C.1952, 105 F.Supp. 517, 523.

3. Carroll v. United States, supra, at pages 153–154, 45 S.Ct. 285; Cervantes v. United States, 9 Cir., 1960, 263 F.2d 800; Johnson v. United States, 1948, 333 U.S. 10, 16–17, 68 S.Ct. 367, 92 L.Ed. 436.

4. The court gave the following instructions:

"In each count of the indictment it is charged that a particular amount or quantity of marihuana was involved. The Government does not have the burden of proving that the quantity was as alleged in the indictment, but only that some measurable amount thereof was in fact involved as charged in the indictment.

\*　　\*　　\*　　\*　　\*

"But as to this definition I have just given you, that any measurable amount is sufficient for the offense, the Court instruction is, as follows. Now, this applies only in the event that the opinion of the jury is that the defendant is guilty. Let's take Count 1. All of you must agree that there was the importation of the 58 pounds of marihuana, or all of you must agree that there was the importation of the one marihuana seed; or all of you must agree that there was both the 58 pounds and the one marihuana seed. The same is true of the second count.

"Now, the reason for that is this: as Mr. Steward pointed out in his argument, it is not going to be proper for 10 of you to say, we find the 58 pounds was imported and 2 of you to say, well, we don't think the 58 pounds was imported but we think the seed was imported. Because you don't have unanimous agreement then. So you really have 3 alternatives if you are going to find the defendant guilty. You must all agree that the 58 pounds was imported; or you must all agree that both the 58 pounds and the one seed was imported. Do I make myself clear? You can't be half doing this half that in this; you have to be all one kind or the other."

find the appellant imported *and* concealed fifty-eight pounds of marijuana, or one seed of marijuana, or both? Or did the jury find the appellant *imported* the fifty-eight pounds and *concealed* the one seed? Or vice versa? In other words, where is the proof that the conviction as to either count rested on the fifty-eight pounds, or the one seed? There was none.

The fifty-eight pounds was found by the officers as a result of an unlawful search. After the discovery, Singh implicated appellant. At that time there was probable cause for appellant's arrest. The search after such lawful arrest disclosed the one marijuana seed.[5] Without doubt, appellant had sufficient possession of the vehicle in which this one seed was found to give him standing to move for its suppression. But up until the first day of trial, appellant's counsel did not know of the existence of this one seed.[6]

■ And until the decision of the Supreme Court in Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697,[7] appellant claimed he had no

5. Exhibit 1 D.

6. In fact, appellant's counsel argued that he was not informed the government relied on the importation and concealment of the one seed until argument to the jury. No reference was specifically made in either count to *this* one seed.

7. There the Court stated, at pages 261–262, 80 S.Ct. at page 731:
"To establish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, although that they may is by no means an inevitable holding, but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession."
After discussing the dilemma that has thus been created for defendants in cases of this type, the Court says, at pages 263–264, 80 S.Ct. at page 732:
"Two separate lines of thought effectively sustain defendant's standing in this case. (1) The same element in this prosecution which has caused a dilemma, *i. e.*, that possession both convicts and confers standing, eliminates any necessity for a preliminary showing of an interest in the premises searched or the property seized, which ordinarily is required when standing is challenged. (2) Even were this not a prosecution turning on illicit possession, the legally requisite interest in the premises was here satisfied, for it need not be as extensive a property interest as was required by the courts below.

"As to the first ground, we are persuaded by this consideration: to hold to the contrary, that is, to hold that petitioner's failure to acknowledge interest in the narcotics or the premises prevented his attack upon the search, would be to permit the Government to have the advantage of contradictory positions as a basis for conviction. Petitioner's conviction flows from his possession of the narcotics at the time of the search. Yet the fruits of that search, upon which the conviction depends, were admitted into evidence on the ground that petitioner did not have possession of the narcotics at that time. The prosecution here thus subjected the defendant to the penalties meted out to one in lawless possession while refusing him the remedies designed for one in that situation. It is not consonant with the amenities, to put it mildly, of the administration of criminal justice to sanction such squarely contradictory assertions of power by the government. The possession on the basis of which petitioner is to be and was convicted suffices to give him standing under any fair and rational conception of the requirements of Rule 41(e)."
The Court stated further:
"In cases where the indictment itself charges possession, the defendant in a very real sense is revealed as a 'person aggrieved by an unlawful search and seizure' upon a motion to suppress evidence prior to trial. Rule 41(e) should not be applied to allow the government

knowledge of a standing sufficient to enable him to move to suppress the fifty-eight pounds of marijuana in Singh's car of which he claimed to know nothing. There was considerable basis for appellant's counsel to take such a legal position. The trial below in this case took place on April 7th and 8th, 1960. The decision of the Supreme Court in Jones v. United States, supra, was not generally reported until April 11, 1960, although rendered on March 28, 1960. Under such circumstances, we cannot reasonably hold that appellant in any way slept on his rights, or failed in any procedural steps available to him.

We believe that under Jones v. United States, supra, appellant did have standing to challenge the search and seizure as a person aggrieved by it. Evidence was introduced against appellant on each count. That evidence had been obtained by an illegal search after an unlawful arrest without a warrant and without reasonable grounds for the arresting officers to believe the appellant had committed, or was then committing, a violation of the narcotics laws. The search did not purport to be, nor was it, a border search. The search on the evidence then before the court, violated the Fourth Amendment. Even if either one of the quantities of marijuana had been obtained by a lawful search, we do not know the basis of the jury's verdict of conviction on the two counts. We are required to reverse on each count.

Because of our view as to the introduction of evidence, it is unnecessary for us to consider the other points urged on appellant's behalf.

We are constrained here to paraphrase the words of a dissenting opinion filed in the Supreme Court of the United States on February 27, 1961:

"Bad men, like good men, are entitled to be tried and sentenced in accordance with law, and when it is shown to us that a person [was un-

lawfully convicted] our obligation is to direct that proper steps be taken to correct the wrong done, without regard to the character of a particular defendant * * *." Green v. United States, 1961, 365 U.S. 301, 81 S.Ct. 653, at page 658, 5 L.Ed.2d 670.

The judgment of conviction as to each count is *reversed*, and the *cause remanded* for further proceedings below.

to deprive the defendant of standing to bring a motion to suppress by framing the indictment in general terms, while

prosecuting for possession." Id. at pages 264–265, 80 S.Ct. at page 733.