Alejandrino **DIAZ–ROSENDO** and Felix Anenson Fernandez, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 19765.

United States Court of Appeals Ninth Circuit.

Feb. 25, 1966.

**126**

William B. Osborne, Los Angeles, Cal., for Diaz-Rosendo.

David C. Marcus, Los Angeles, Cal., for Anenson Fernandez.

Manuel L. Real, U. S. Atty., John K. Van De Kamp, Asst. U. S. Atty. Chief, Crim. Div., J. Brin Schulman, Asst. U. S. Atty., Asst. Chief, Crim. Div., Phillip W. Johnson, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, JERTBERG, MERRILL, KOELSCH, BROWNING, DUNIWAY and ELY, Circuit Judges.

JERTBERG, Circuit Judge:

Following trial to a jury the appellants, Alejandrino Diaz-Rosendo and Felix Anenson Fernandez, hereinafter Diaz and Fernandez, respectively, were convicted of offenses hereinafter described.

The District Court had jurisdiction under 18 U.S.C. §§ 2 and 3231, and 21 U.S.C. § 176a. This court has jurisdiction under 28 U.S.C. §§ 1291 and 1294.

Count One of the indictment charged that Diaz, Fernandez, one Antonio Contreras-Zumaya, hereinafter Contreras, and other persons to the grand jury unknown, conspired to import and bring into the United States from Mexico, marijuana, without presenting said marijuana for inspection and without entering and declaring said marijuana as required by 19 U.S.C. §§ 1459, 1461, 1484 and 1485, and to conceal, transport and facilitate the concealment and transportation of marijuana which had been imported into the United States contrary to the law, being in violation of 21 U.S.C. § 176a. This count contains two overt acts: (1)

on March 10, 1964, Contreras drove an automobile containing approximately 204 pounds of marijuana; and (2) on or about March 10, 1964, Fernandez purchased an automobile tire for a 1953 Buick automobile.

Count Two charged that Contreras, with intent to defraud the United States, smuggled into the United States from Mexico, marijuana which should have been invoiced, and knowingly imported said marijuana contrary to law, and Diaz and Fernandez knowingly aided, abetted, counseled, and procured the commission of said offense.

Prior to trial Diaz, Fernandez and Contreras filed a motion to suppress evidence consisting of 204 pounds of marijuana taken and seized from the motor vehicle being operated by and under the control and in the possession of Contreras, and a piece of paper taken from the person of Contreras, given to him by one Becerra, hereinafter mentioned, on the ground that said evidence was taken and seized without probable cause and without a search warrant or a warrant of arrest. Contreras withdrew his motion to suppress prior to the court hearing. Following hearing by the court, the motion was denied as to Diaz and Fernandez. The charges against Contreras were severed from the charges against appellants and the trial proceeded only as to appellants.

At the jury trial Contreras testified as a witness on behalf of the Government. Appellants presented no witnesses on their behalf.

Each appellant was committed to the custody of the Attorney General for a period of ten years on each count, the sentences to run concurrently. The record does not reveal the disposition of the case against Contreras except the statement by one of the counsel for appellants, made at the time of their sentencing, that Contreras pleaded guilty to a tax count and was granted probation.

That part of 21 U.S.C. § 176a reading as follows:

"Whenever on trial for a violation of this subsection, the defendant is

shown to have or to have had the marihuana in his possession, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains his possession to the satisfaction of the jury."

was not imparted to the jury by the district judge in the course of his instructions to the jury, or in any other manner.

Appellants specify that the District Court erred: (a) in refusing to grant their motion to suppress evidence; and (b) in refusing to grant judgment of acquittal on each of the two counts on the ground that the evidence under each count was insufficient to sustain a conviction.

Appellants further contend that Count One unlawfully charges two conspiracies, or a conspiracy within a conspiracy in that the count charges a conspiracy to smuggle marijuana into the United States from Mexico, and to conceal and transport the same after the same had been smuggled into the United States.

The following summary of the facts is taken largely from appellee's brief which, from our study of the record, we believe to be a fair statement:

In March 1964 one Patricio Becerra had a conversation with Contreras in Mexico. Becerra offered Contreras $150 to take a car to Los Angeles. During the conversation, which took place in Tijuana, Baja California, Becerra gave Contreras a piece of paper with a telephone number (DU 5–3988), a name (Rene Aspuro), and the term, "Cuorto 114". "Cuarto" in Spanish means "room". It strongly appears from the evidence that all of the material on the piece of paper except the word "cuorto" was written by Diaz.

Becerra instructed Contreras to call the telephone number upon his arrival in Los Angeles. Becerra delivered a 1953 Buick to Contreras. That night Contreras drove it into the United States from Mexico, crossing at San Ysidro. He was waved ahead at the port of entry and headed for Los Angeles. The vehicle contained approximately 204 pounds of marijuana, which had a sales value of from $2721 to $5442 in Tijuana, Mexico.

During the trip there was a puncture in a tire. Contreras replaced the tire but had to do so with the lights on. The battery ran down, and the car wouldn't start. Contreras got a ride to Los Angeles, where he called the telephone number DU 5–3988. He told the person at DU 5–3988 that the room number was 114.

DU 5–3988 was the telephone number of the Parkway Motel in Los Angeles. On March 7, 1964, three men had arrived at the Parkway Motel in a taxi and obtained Room 114. Two of these men were appellants Diaz and Fernandez. Appellants came in to register while the third man remained outside of the office. One of the two appellants signed the only name which was provided. This was the name, *"Rene Aspuro."* The motel owner could not remember which of the two appellants signed the *Aspuro* name. It strongly appears from the evidence that the signature was not that of Diaz.

When one of the three men called for a taxi, he said his name was "Fernandez," so the manager's wife added the Fernandez name to the registration card.

The motel manager later noted that a Ford automobile was connected with Room 114. It had a California license number of OCB–795.

The call by Contreras to *Rene Aspuro* in Room 114 occurred on the night of March 9–10, 1964, two days after appellants registered there under the Rene Aspuro name. Contreras was told that the person who came to the telephone was "Rene Aspuro." Contreras said that the car could not proceed, due to battery trouble, and had been left on the highway. The Rene Aspuro voice asked where he was and Contreras said he was at a cafe on Broadway, giving the directions. He waited for them at the cafe. The motel manager testified that on the night of March 9–10 a telephone call came in for Room 114 and was answered at

that room. Shortly afterwards two men from Room 114 left in the Ford. They were appellants. They never returned. The third person checked out on the morning of March 11.

Appellants met Contreras at the cafe. He had told them that he would be wearing a black jacket. They got into a Ford and headed for the car that had the battery trouble. Appellant Fernandez was driving.

They reached the Buick, started it by pushing it, and drove to a service station at San Onofre, about 3½ or 4 miles south of San Clemente. At the service station appellant Fernandez told the station employee that he wanted the battery of the Buick charged. A tire also was purchased, and Fernandez paid the total bill, about $8.00, giving a tip of $1.00 more. Fernandez, Diaz, and Contreras worked together in changing the tire.

After the bill was paid, the three men looked at the flashing lights on a highway overpass and had a conversation. When the lights are flashing, the Immigration checkpoint one mile north of San Onofre is in operation. When the lights are not flashing, the checkpoint is not in operation.

Because he saw the flashing lights, Contreras decided to head for San Diego. Such a change of course would involve taking the Highway 101 off-ramp to Basilone Road, making a U-turn to the left on Basilone Road, going west on the Basilone overhead over Highway 101, and turning south to return to the freeway. The overhead is about six-tenths of a mile south of the Immigration checkpoint, which is 71 miles from the border between the United States and Mexico.

At that time Richard E. Dick, who was an Immigration Patrol Inspector as well as a Customs Patrol Inspector, was assigned to the traffic check at the Immigration checkpoint. Inspector Dick observed the 1953 Buick driven by Contreras. It was traveling west on the Basilone overhead in the company of a Ford which was occupied by appellants Diaz and Fernandez. The Buick and Ford were "very close together" with the Buick in front. They were taking a direction that would necessarily lead south on Highway 101.

In the past there had been a number of cases in which drivers of vehicles had utilized the Basilone overhead "turn-around" to head back to the south on the freeway to avoid the Immigration checkpoint.

Basilone Road went to a military camp and to no other point. The incident in question occurred at about 5:15 a. m. The military base allowed no visitors between 2 a. m. and 6 a. m. Military base stickers are placed on the bumpers of appropriate vehicles. Neither the Buick nor the Ford had a base sticker. Inspector Dick was aware of these facts before he attempted to stop the two vehicles. There is very little military traffic leaving the base at that time of night.

Southbound vehicles from Los Angeles or other areas north of San Onofre could stop at San Onofre and return to the freeway by using the Basilone overhead, but they could stop at San Onofre only by proceeding about 1.3 miles to the south and returning (for a total addition of 2.6 miles to the ordinary distance to the south from Los Angeles) or by making what is apparently an illegal U-turn about seven-tenths of a mile south of the station and returning. San Onofre itself consists merely of a service station and a restaurant.

Inspector Dick followed the two vehicles, got between them, and stopped the Buick 2.3 miles south of the Immigration checkpoint. He employed two flashing red lights to stop the Buick, and used an amber flashing light in the rear in an attempt to halt the Ford. The Buick and Ford were still close together, traveling at approximately 45 to 55 miles per hour.

When Inspector Dick stepped out of his vehicle he flashed his flashlight at the Ford and yelled at the driver as the Ford went by. The passenger in the Ford looked at Dick, who was wearing his official uniform. He was fairly certain that one of the occupants of the Ford was

of Mexican descent. The Ford did not stop.

Dick identified himself to Contreras, the driver of the Buick. Contreras said that he knew that Dick was an Immigration Officer. He stated that he was from Mexico. Dick asked for an Immigration document, asking twice in English and two or three times in Spanish. Contreras was "very nervous." Dick believed that either Contreras was illegally in the country or had an illegal alien concealed within the vehicle. Contreras tried several times to hand Dick the keys to the Buick.

Due to the route of the vehicle, the nervousness of the driver, and the latter's reluctance to show an Immigration document, Inspector Dick looked in the trunk and under the rear seat. In looking under the rear seat he thought that perhaps there was another person in the car. He was not looking for contraband or smuggled goods.

He knew of previous cases in which aliens have been hidden under the back seat of a vehicle and other places, including the trunk and under the hood. There have been cases of aliens hiding between the radiator and the grille. On one occasion an adult alien was concealed in the spare tire well of a station wagon. Some of the older models, such as the Buick in question, had larger hollowed areas under the back seat than is the case with more recent models.

Inspector Dick found packages of marijuana under the rear seat. He recognized the marijuana, as several packages were torn. Contreras was then arrested. Packages also were concealed in the door panels, side panels, and other areas of the vehicle.

The "Rene Aspuro" note was obtained from the pocket or wallet of Contreras. Dick had no search warrant and no warrant of arrest.

Inspector Dick had asked other Immigration Officers to overtake and stop the Ford. Inspector Floyd T. Goff located the Ford about 14 or 15 miles south of the point at which the Buick was stopped. It was proceeding at a slow pace, between 40 and 50 miles per hour. Fernandez was driving. Diaz was with him. The Ford had the same license number observed by the Parkway Motel Manager.

█ We first consider appellants' contention that the evidence is insufficient to sustain a conviction of each of them on each count of the indictment. In reviewing such an assignment of error it is our duty to view the evidence in the most favorable light to sustain the judgments of conviction entered in the District Court. Glasser v. United States, 315 U. S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Stein v. United States, 337 F.2d 14 (9th Cir. 1964); Mosco v. United States, 301 F.2d 180 (9th Cir. 1962), C.D. 371 U.S. 842, 83 S.Ct. 72, 9 L.Ed.2d 78.

In support of appellants' contention it is argued, generally, in Fernandez' brief that the evidence failed to show that he was ever in Mexico; that he knew anything of Becerra or his activities; that he knew anything about Contreras' smuggling marijuana; that he had any knowledge of the contents of the Buick automobile or of any contraband found in that car; or that he in any way aided or abetted in the smuggling of marijuana or the transportation thereof.

Appellant Diaz has filed no brief on this appeal but has submitted his case on Fernandez' brief.

█ Appellants overlook the fact that while a part of the evidence was direct, the larger portion thereof was circumstantial. Conspiracy and aiding or abetting is usually proved by circumstantial evidence. Isaacs v. United States, 301 F.2d 706 (8th Cir. 1962). They can rarely be proved in any other manner.

█ Viewing the evidence in the light most favorable to support the judgments of conviction, we believe that there is ample evidence, direct and circumstantial, upon which the jury could draw reasonable inferences to fully support the finding of the jury that the offenses charged were committed by the appellants. The jury weighs the contradictory evidence and inferences, judges the credi-

bility of witnesses and draws the ultimate conclusions as to the facts. We are in no position to disturb such finding.

■ It must also be noted that once the existence of a conspiracy is shown, slight evidence is all that is required to connect the defendant with the conspiracy. Sabari v. United States, 333 F.2d 1019 (9th Cir. 1964). Rehearing denied.

■ Appellants cite a number of conspiracy cases from this and other circuits in which the evidence has been held insufficient to convict. We have examined a number of them and find them clearly distinguishable on the facts. Each case must be decided upon the facts appearing in that case. Appellants also suggest that the testimony of Contreras should be rejected because he was permitted to plead guilty to another charge. The fact that Contreras may have hoped for leniency affected only the weight which the jury should accord to his testimony. United States v. Rainone, 192 F.2d 860 (2nd Cir. 1951).

Appellants further contend that Count One charges two conspiracies, or a conspiracy within a conspiracy which is not sanctioned or permitted by law. This contention is apparently founded upon the fact that Count One charges a conspiracy to smuggle marijuana into the United States and to conceal, transport, and facilitate the transportation and concealment of marijuana.

■ Appellants cite Braverman v. United States, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942) to support this contention. But this case is distinguishable from the case at bar. In *Braverman* the indictment had several conspiracy counts to violate various provisions of the Internal Revenue Code. The Supreme Court reversed because the evidence could sustain only a single conspiracy to commit the offenses. Furthermore, the Court held, citing Frohwerk v. United States, 249 U.S. 204, 210, 39 S.Ct. 249, 63 L.Ed. 561, 565 "The allegation in a single count of a conspiracy to commit several crimes is not duplicitous, for 'The

conspiracy is the crime, and that is one, however diverse its objects'." 317 U.S. at 54, 65 S.Ct. at 102. It is apparent that a conspiracy, as in the instant case, to commit two offenses may be charged in one count of an indictment. Frohwerk v. United States, supra. Therefore, this contention is without merit.

Appellants' final contention is that the District Court erred in failing to suppress the evidence taken from the Buick car, consisting of the marijuana, which car was being driven by, and was under the possession and control of Contreras, and the evidence taken from the person of Contreras. The District Court held that appellants had standing to make the motion to suppress, but following a hearing denied the motion. It is our view that the appellants have no standing to object to the introduction of the evidence taken from the Buick car and from the person of Contreras. Since the decision of the District Court denying the motion to suppress, after hearing, is correct we may affirm on the ground of lack of standing of the appellants despite the fact that this was not a ground upon which the District Court relied. Helvering v. Gowran, 302 U.S. 238, 58 S.Ct. 154, 82 L.Ed. 224 (1937); Harvey v. Sadler, 331 F.2d 387 (9th Cir. 1964).

Whether appellants had standing to maintain the motion to suppress is to be decided with reference to Rule 41(e), Federal Rules of Criminal Procedure. "This is a statutory direction governing the suppression of evidence acquired in violation of the conditions validating a search." Jones v. United States, 362 U.S. 257 at 260, 80 S.Ct. 725, 730, 4 L.Ed. 2d 697 (1960).

In pertinent part the rule provides:

"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, * * *."

Prior to *Jones,* the situation was as expressed in *Jones,* supra, at 261:

"To establish 'standing,' Courts of Appeals have generally required that the movant claim either to have owned or possessed the seized property or to have had a substantial possessory interest in the premises searched. Since narcotics charges like those in the present indictment may be established through proof solely of possession of narcotics, a defendant seeking to comply with what has been the conventional standing requirement has been forced to allege facts, the proof of which would tend, if indeed not be sufficient, to convict him. At the least, such a defendant has been placed in the criminally tendentious position of explaining his possession of the premises. He has been faced, not only with the chance that the allegations made on the motion to suppress may be used against him at the trial, although that they may is by no means an inevitable holding, but also with the encouragement that he perjure himself if he seeks to establish 'standing' while maintaining a defense to the charge of possession."

The *Jones* decision expanded the class of those who had standing to challenge an unlawful search and seizure by eliminating the requirement that the movant first show a proprietary interest in the premises searched, or that he show that he owned or possessed the property seized. Thus, in *Jones,* standing arises when a person is "legitimately on premises where a search occurs * * * when its fruits are proposed to be used against him." (p. 267, 80 S.Ct. p. 734), and where this person's conviction "flows from his possession * * * at the time of the search." (p. 263, 80 S.Ct. p. 732). He need not make a "preliminary showing of an interest in the premises searched or the property seized" (p. 263, 80 S.Ct. p. 732). *Jones,* however, did not extend the new class of persons

having standing without limitation since it stated:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. Rule 41(e) applies the general principle that a party will not be heard to claim a constitutional protection unless he 'belongs to the class for whose sake the constitutional protection is given.' * * * The exclusion in federal trials of evidence otherwise competent but gathered by federal officials in violation of the Fourth Amendment is a means for making effective the protection of privacy." (80 S.Ct. p. 731 p. 261).

In Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) the admission of heroin seized from the possession of Toy although inadmissible against him because it was obtained as a result of an unlawful search and arrest of him "invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." (p. 492, 83 S.Ct. p. 419).

In the instant case the marijuana received in evidence was seized from the Buick automobile which was being operated by and was under the possession and control of Contreras. The piece of paper which was introduced in evidence was taken from the person or wallet of Contreras.

The affidavit in support of the motion to suppress, insofar as the same related to the marijuana and piece of paper, simply states that:

"[O]n or about March 10, 1964, defendant ANTONIO CONTRERAS-ZUMAYA was stopped on U. S. Highway 101 while proceeding south toward San Diego, California, at a

point some fifty or sixty miles north of the international boundary between the United States and Mexico.

"That the persons stopping said vehicle were acting for and on behalf of investigating agencies of the United States Government. That said persons had neither a warrant for the arrest of ANTONIO CON-TRERAS-ZUMAYA, nor a warrant for a search of the vehicle which ANTONIO CONTRERAS-ZUMA-YA was operating. That thereafter said officers conducted a search of said vehicle and took therefrom approximately 204 pounds of marijuana, which said marijuana is evidence upon which the indictment in said cause is based.

"That affiant is further informed and believes that various and other evidentiary items were taken both from the vehicle operated by ANTONIO CONTRERAS-ZUMAYA and from his person."

It is to be noted that the search was directed solely at the vehicle and person of Contreras. No evidence was taken from the Ford automobile in which the appellants were riding, or from the person of either one of them.

■ Applying the teachings of *Jones* and *Wong Sun* neither appellant was on the "premises" [the Buick automobile of Contreras] where the search occurred and their conviction did not flow from the possession by either one of them of the marijuana at the time of search. The appellants come squarely within the language of *Jones* which put them in the category of those "who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." Likewise these appellants are in the position of *Wong Sun* since "no right of privacy of person or premises" of theirs was invaded "which would entitle (them) * * * to object" to the use of the marijuana and the piece of paper as evidence in their trial.

Appellants, in support of their position that the marijuana and the piece of paper should have been suppressed, rely upon three cases from this Circuit: Cervantes v. United States, 263 F.2d 800 (9th Cir. 1959); Cervantes v. United States, 278 F.2d 350 (9th Cir. 1960); Contreras v. United States, 291 F.2d 63 (9th Cir. 1961). These cases are inapposite.

In the first *Cervantes* case, Cervantes was stopped at San Clemente, California, while driving north in his Chrysler. He was stopped by a federal inspector of the Immigration and Naturalization Service. Cervantes was searched and heroin was found on his person. Later his car was searched and a number of marijuana seeds were discovered in a secret compartment of his car. Clearly, Cervantes had standing. He was the person against whom the search was directed; he was the person who was the owner of the automobile; he was the person who had "possession" of the heroin and marijuana. Cervantes' conviction was reversed because of the Government's failure to meet the burden of establishing "probable cause" for the arrest and for the search without an arrest or search warrant. On retrial Cervantes was again convicted and his conviction reversed in the second *Cervantes* case for the same reason as his conviction was reversed in the first case.

In *Contreras*, Contreras and his co-defendants were driving north on a highway about 72 miles north of the Mexican border and were stopped by a patrol inspector employed by the Immigration and Naturalization Service. The inspector asked the man on the right side of the front seat of the car to step out. When this passenger complied with the request, the inspector noted a paper sack covered by a leather jacket and a bedspread. He removed the paper sack from the car and found that it contained marijuana. On a motion to suppress, the district court ruled that Contreras was without standing since it had not been shown that any of the defendant's property had been seized. On appeal from conviction this court held that appellants did have stand-

ing, and since the search had been made without a search warrant and without probable cause, the conviction was reversed. Clearly, the appellants had standing. They were lawfully in the automobile at the time it was stopped, and the search made. The search was directed toward them. They had "possession" of the marijuana.

While not relied upon by the appellants, we find it necessary to discuss the decision of this court in Plazola v. United States, 291 F.2d 56 (9th Cir. 1961). The only reference to that case in appellants' brief appears in a quotation from the *Contreras* case wherein the court in *Contreras* stated:

> "See the opinion of this court in a somewhat similar case, Luis Sanchez Plazola v. United States, 1961, 291 F. 2d 56."

The *Plazola* case is closely similar on its facts to the instant case.

The facts of the *Plazola* case are as follows: Plazola was driving north, about 50 or 60 miles from the border. He had crossed the border earlier that day, had not been searched, but had been followed by customs officers. The officer had no reason to suspect Plazola of smuggling marijuana on this occasion. While Plazola was being followed, he made two consecutive U-turns. A car driven by Singh passed the officers' car at high speed, slowed behind Plazola's car, traveled beside it for ten seconds, then traveled behind it. Plazola stopped in a small town while Singh drove slowly onward, and then Plazola caught up with Singh. The officers stopped Plazola, told him to accompany them while they drove on to stop Singh, two miles away. Singh's car was searched and 58 pounds of marijuana was found. Singh implicated Plazola. A subsequent search of Plazola's car turned up one seed of marijuana, but Plazola's counsel did not know this until the date of trial. Plazola was indicted and convicted of unlawfully importing and bringing into the United States 58 pounds of marijuana, and of receiving, concealing and facilitating the transportation thereof. In his instruc-

tions the trial judge told the jury that defendant would be guilty on the first count if he "either did the importing or caused it or aided and abetted the importation." (R.T. 190.) As to the second count, *either* receiving, concealing, or facilitating would be sufficient for conviction. (R.T. 188.) On appeal, it was held that Plazola had standing to challenge the search and seizure as a person aggrieved by it, since, "Evidence was introduced against appellant on each count. That evidence had been obtained by an illegal search after an unlawful arrest without a warrant and without reasonable grounds for the arresting officers to believe the appellant had committed, or was then committing, a violation of the narcotics laws." (p. 63).

We believe, in light of the facts stated in the opinion, the holding of this court in *Plazola* with respect to the issue of "standing" as it relates to the marijuana seized in the search of the automobile of Singh is not consonant with the teachings in *Jones* and *Wong Sun*. However, facts not stated in the opinion, but disclosed by the record, reveal that the holding in *Plazola* is correct and is consonant with the teachings in *Jones* and *Wong Sun*. The record discloses that in obtaining Plazola's conviction the Government relied upon the theory that Plazola had constructive possession of the marijuana in Singh's car. Instructions offered by the Government on the subject of constructive possession, and on that part of 21 U.S.C. § 176a, quoted supra, were given to the jury. In view of these facts this court properly held that Plazola had standing for the purpose of challenging the validity of the search of Singh's car.

We find no other decision of this Circuit which is contrary on the "standing" issue to the views herein expressed.

To the extent that the language in *Plazola* is inconsistent with the present holding it is disapproved.

Decisions from other circuits which have followed the teachings of *Jones* where a defendant was held not to have standing to contest a search, either be-

cause he was not legitimately present on the premises searched, or because the evidence sought to be suppressed was not discovered as the result of a search directed at him are: United States v. Konigsberg, 336 F.2d 844 (3d Cir. 1964); Williams v. United States, 323 F.2d 90 (10th Cir. 1963); United States v. Haley, 321 F.2d 956 (6th Cir. 1963); Armada v. United States, 319 F.2d 793 (5th Cir. 1963); Fisher v. United States, 324 F.2d 775 (8th Cir. 1963); Murray v. United States, 333 F.2d 409 (10th Cir. 1964); cf. United States v. Guerra, 334 F.2d 138 (2d Cir. 1964).

We hold that under the facts of this case the appellants were without standing to move for the suppression of the evidence above mentioned.

Since the appellants have no standing to object to the admissibility of the seized marijuana, it is not necessary to consider the question of whether or not the contraband was obtained in a lawful manner. Nor is it necessary to ascertain if the appellants' arrest was lawful, as no evidence was obtained from their vehicle or their persons.

The judgment of conviction is affirmed.