**UNITED STATES of America,**

v.

**Kenneth Wayne CLEAVER, Appellant.**

**No. 22558.**

United States Court of Appeals
Ninth Circuit.

Oct. 21, 1968.

David B. Wexler (argued), Tucson, Ariz., for appellant.

Jo Ann D. Diamo (argued), Asst. U. S. Atty., Edward E. Davis, U. S. Atty., Tucson, Ariz., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and HAMLEY and MERRILL, Circuit Judges.

HAMLEY, Circuit Judge:

Kenneth Wayne Cleaver appeals from his conviction on charges of concealing and facilitating the transportation of marijuana in violation of section 106 of the Narcotic Control Act of 1956 (Act), 70 Stat. 570, 21 U.S.C. § 176a (1964), and of importing benzedrine tablets in violation of 18 U.S.C. § 545 (1964).

Defendant's only contention on this appeal is that the marijuana and benzedrine tablets were seized as a result of an unlawful search of an automobile in which he was riding, and that this evidence should therefore not have been received at the trial.

The relevant facts are not in dispute. On the night of July 12, 1967, Everett H. Turner, a Customs Port Investigator at Nogales, Arizona, received a telephone call at his home from Customs Inspector Larson, who was stationed at the Grand Avenue, Nogales, Port of Entry. Larson reported that he had received a telephone call from an informer in Nogales, Mexico. Turner recognized the name as that of an informer who had been in contact with Customs agents about twenty or twenty-five times the previous year, and whose information had proved to be accurate about sixty percent of the time.

Larson repeated to Turner the informer's message that three white American males, two wearing green

Army jackets, one wearing a black shirt or sweater, and one or more wearing levis, were in Mexico trying to purchase marijuana. Turner immediately entered Mexico to investigate the report. Within fifteen minutes the informer again telephoned the Port of Entry; Customs Agent Henry H. Washington answered and recognized the voice as that of the same informer. The informer said that the three white American males had jumped the international fence near the Mexican cemetery with a bag of marijuana.

Washington immediately relayed the message to Turner by radio. Turner returned to the United States side and inspected the end of the three mile link fence that runs west from the Port. Finding nothing, he re-entered Mexico and located the informer who told him that the three men had been dealing with a certain individual who was known to the agents as a dealer in narcotics, and that the men had a bag and had crossed the fence. In none of the three conversations with the informer did the agents attempt to probe the source or basis of the informer's knowledge.

After speaking with the informer in Mexico, Turner again returned to the United States. He drove west along International Street which parallels the international fence for a mile or so and then becomes a pedestrian path. As Turner drove along the street, he saw two young men walking from the brush at the end of the road. One of the men was wearing a green Army jacket and the other had on a black sweater. They were walking east towards town in a normal manner and were carrying nothing. Although it was around 11:00 o'clock at night, Turner could see the men well because he drove within three feet of them in his unmarked car and the area was well lighted.

Turner parked his car and followed the two men on foot through a well-lighted residential and government office area. After walking about five blocks, the two men got into a red Falcon Ranchero pick-up truck with California license plates. Turner returned to his own car and then observed the Ranchero nearing the international fence. The Ranchero stayed about three or four minutes in the area near the fence, during which time it was not clearly within Turner's view. When the Ranchero returned Turner could see three people in it, but could not get close enough to recognize any of them.

The Ranchero went east, then turned north a block, then east a block, and then south again toward the international fence. Turner then discontinued surveillance of the car and stationed himself north of town on Highway 89, the main artery out of town. Shortly after midnight, the Ranchero passed him, heading north on Highway 89. As he watched it, it made a U-turn and was parked in front of a closed Richfield gas station. Turner then went on two miles farther where, within twenty minutes, the Ranchero passed him again. It continued north, followed by Turner and several other agents.

Turner meanwhile sent an agent back to the Richfield station to see if the occupants of the Ranchero had left anything; the agent found nothing. The agents following the Ranchero testified that it repeatedly slowed down and speeded up as if the occupants were trying to see if they were being followed. At a point twelve miles from the Port, the agents stopped the Ranchero, arrested the three occupants, including Cleaver, searched the automobile, and found the marijuana and benzedrine tablets hidden under the hood and in the back.

Turner testified that the agents waited until the Ranchero reached the twelve-mile post before stopping it because they wanted to make sure that it would not turn back. When stopped, the three men were in shirt sleeves, but two Army fatigue jackets and a black sweater were in the truck. At least one of the three was wearing levis.

█ It is conceded that this was not a border search, and that the agents had neither an arrest warrant nor a

search warrant at the time of the arrest and search. The search was therefore lawful only if the agents had probable cause to arrest defendant at that time and place and only if the search and seizure were incident to that arrest. Section 104(a) of the Act, 26 U.S.C. § 7607 (1964); Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777; Draper v. United States, 358 U.S. 307, 310n, 79 S.Ct. 329, 3 L.Ed.2d 327.

■ Probable cause to arrest the defendant existed if the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information prior to the arrest were sufficient in themselves to warrant a man of reasonable caution in believing that an offense had been or is being committed by such a person. See Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879; Hollins v. United States, 9 Cir., 338 F.2d 227, 229. The burden of showing probable cause is on the Government. Cervantes v. United States, 9 Cir., 278 F. 2d 350, 351.

The informer reported that three white American males had just entered the United States with a bag of marijuana. Although he did not represent that he had personal knowledge of this fact, he did disclose to the Customs agents some of the underlying circumstances from which he concluded that the men had marijuana, namely, that immediately prior to their entry into the United States, the three individuals in question had been in contact with a known narcotics dealer and that they had surreptitiously crossed the international border at an unauthorized place carrying a bag.

■ In addition, the agents were able to corroborate details of the informer's report, thus tending to establish the latter's reliability in this particular instance. Such corroboration consisted in part of noting that the two men first seen in a suspicious place near the border were wearing clothes of the kind described by the informer and were near the indicated place of entry. Additional corroboration consisted of the agent's later observation of the automobile seen near the border with three persons in it being driven in a furtive manner which the experienced agents knew to be characteristic of narcotics smugglers.[1]

■ In Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327, the Supreme Court dealt with the legality of a warrantless arrest of a man on the move. If we apply the criteria of that case, the circumstances related above establish that the arresting officer had probable cause in the case before us. Moreover, if it be assumed that the Supreme Court, with respect to warrantless arrests of individuals on the street, now requires the more exacting test announced in Aguilar v. State of Texas, 378 U.S. 108, 113–114, 84 S.Ct. 1509, 12 L.Ed.2d 723, a case involving the sufficiency of an application for a warrant to search a dwelling, we think the latter test was also met. See Travis v. United States, 9 Cir., 362 F.2d 477, 479.[2]

Affirmed.

---

1. The fact that some of the corroborative circumstances have every appearance of innocent behavior is not controlling. See Newcomb v. United States, 9 Cir., 327 F. 2d 649.

2. While we need not now decide the question, it can be persuasively argued that the Supreme Court did not intend the Draper test to be superseded by the Aguilar criteria where, as in Draper and in our case, the officers were not endeavoring to search a building, but to arrest an individual on the street or in a moving vehicle. See Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833, 837. The Supreme Court has several times cited Draper with approval since Aguilar was decided. See McCray v. State of Illinois, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62; United States v. Ventresca, 380 U.S. 102, 107, 85 S.Ct. 741, 13 L.Ed.2d 684; Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. This court has also applied the criteria of Draper, where the circumstances were similar, since the decision in Aguilar was announced. See Gilbert v. United States, 9 Cir., 366 F.2d 923, 930–931.