Edward C. KUHL, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 19989.

United States Court of Appeals
Ninth Circuit.

Nov. 18, 1966.

Edward C. Kuhl, in pro. per.

Cecil F. Poole, U. S. Atty., Jerrold M. Ladar, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before CHAMBERS, BARNES, HAMLEY, JERTBERG, MERRILL, KOELSCH, BROWNING, DUNIWAY and ELY, Circuit Judges.

DUNIWAY, Circuit Judge:

On April 18, 1962, Edward C. Kuhl was convicted, after a jury trial, on five counts alleging violations of federal counterfeiting laws—four substantive (18

U.S.C. § 474 [1964]) and one conspiracy count (18 U.S.C. § 371 [1964]).[1] We affirmed on September 12, 1963. *Kuhl v. United States*, 9 Cir., 322 F.2d 582.

Kuhl thereafter filed in the same criminal proceeding the two motions which are before us on this appeal. One of these motions is denominated, "Motion to Hear Facts and Witnesses and to Determine the Validity of Illegally Seized Evidence." The other, which is supported by an affidavit and a statement containing allegations of fact and arguments, is entitled, "Motion for Hearing to Determine Legality of Search of Dwelling where Evidence Seized therefrom was Prejudicial to Petitioner."

By means of these motions, Kuhl questions the admission at his trial of exhibits consisting of articles obtained as the result of a search and seizure which took place at the home and garage of his co-defendant Edward R. Heisler. Among the items in question were the aluminum plates and photographic negatives referred to in the indictment, a photograph of Kuhl, photographic solutions and developing equipment, graph paper, a Multigraphic machine, and other materials. Kuhl asserts that the search and seizure was unlawful because it was general and exploratory, made solely to find evidence of Heisler's and Kuhl's guilt, and was therefore not reasonably incident to the arrest of Heisler.

The district court, treating the two motions as one (as we shall likewise do), and as made either under Rule 41(e), Federal Rules of Criminal Procedure, to suppress evidence, or under 28 U.S.C. § 2255 (1964), to vacate the judgment of conviction and sentence, denied them without hearing. This appeal followed.

### I.

██ The district court correctly determined that the motion if treated as one made under Rule 41(e) to suppress evidence, must be denied. Such a motion must be made before or during the criminal trial.[2]

Treating the motion as made under 28 U.S.C. § 2255, the district court held that such a motion is not a proper vehicle for attacking the admission of evidence on the ground of unlawful search and seizure.

The district court is supported in this ruling by a long line of decisions of this court, the most recent being *Williams v. United States*, 9 Cir., 1962, 307 F.2d 366. We ordered a hearing en banc for the purpose of considering the view of District Judge William T. Sweigert, as expressed in his opinion in *United States*

---

1. In count 1, Kuhl and his co-defendant, Edward R. Heisler, were charged with knowingly and wilfully making and executing two aluminum multilith plates for the back impression of a twenty dollar Federal Reserve Note. In count 2, they were charged with knowingly and wilfully making and executing three photographic negatives of the back of twenty dollar Federal Reserve Notes. In count 3, they were charged with knowingly and wilfully having in their control, custody and possession the two aluminum multilith plates referred to in count 1. In count 4, they were charged with knowingly and wilfully having in their control, custody and possession, the three photographic negatives referred to in count 2. In count 5, they were charged with conspiring together and with others to commit the offenses described in counts 1 to 4.

Kuhl was sentenced to five years imprisonment on each of counts 1, 2 and 5, these sentences to run concurrently. The imposition of sentences on counts 3 and 4 was suspended and, as to them, Kuhl was placed on probation for five years, such period of probation to be consecutive to the sentences imposed on counts 1, 2 and 5.

2. Rule 41(e) provides:
"The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, * * *"

According to the district court, Kuhl had ample opportunity to make such a motion prior to or at the trial; and he did in fact move prior to trial to suppress certain other evidence which he also claimed to be illegally seized. There is no claim that Kuhl was unaware of the grounds for this motion prior to trial.

v. Winstead, N.D.Cal., 1964, 226 F.Supp. 1010, 1011, that this position must be re-examined in the light of Mapp v. Ohio, 1961, 367 U.S. 643, 655, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081, decided in 1961, and People of State of California v. Hurst, 9 Cir., 325 F.2d 891, decided in 1964.[3] These cases stand for the proposition that federal habeas corpus is the means available to a state prisoner to get his constitutional search and seizure question before a federal trial court. On the other hand, a federal prisoner can get that question before a federal trial court at his criminal trial. It has been suggested that, for this reason, the federal courts would be justified in granting such relief to state prisoners in habeas corpus, while denying it to federal prisoners in section 2255 proceedings.[4] For reasons hereafter stated, we do not reach this question.[5]

The Government argues that Kuhl does not have standing to raise the search and seizure question because he was not present at the Heisler premises at the time of the search, he did not reside on the premises, and there is no evidence showing he was connected with the renting of the premises.[6] For the same reasons, we do not reach the question of standing.

3. *Hurst* was reversed by the Supreme Court, 1965, 381 U.S. 760, 85 S.Ct. 1796, 14 L.Ed.2d 713, because of the additional holding by this court, later undermined by Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, that the constitutional exclusionary rule applicable to state prosecutions, announced in *Mapp*, would be given retroactive effect. This reversal in no sense brings into question the ruling, stated in our opinion in *Hurst*, that federal habeas corpus is available to a state prisoner in questioning state application of the exclusionary rule.

4. See Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. of Pa. L.Rev. 378 (1964).

5. Compare the decisions of the District of Columbia Circuit, Thornton v. United States, D.C.Cir., 1966, 368 F.2d 822 (decided October 6, 1966), the Fourth Circuit, United States v. Sutton, 4 Cir., 1963,

## II.

In support of its denial of the section 2255 motion without a hearing, the district court stated these additional reasons:

"The record is completely set forth in the transcripts of the trial and hearing on motion to suppress and has been reviewed on appeal. No further hearing is necessary. Petitioner was aware of the facts concerning the search of the Heisler residence. He was represented by counsel who was also aware of the facts but elected not to move to suppress. Petitioner acquiesced in the admission of this evidence at the trial. He appealed from the judgment of conviction and raised the question of illegal search and seizure. He cannot now relitigate the question by a motion under section 2255."

On Kuhl's direct appeal, he assigned as error the overruling of his objection to use of the evidence taken from Heisler's home and garage. This court did not reach the merits of that contention because it found that no such objection had been made either by way of a pretrial motion to suppress, or during the course of the trial. Kuhl v. United States, 9 Cir., 1963, 322 F.2d 582, 586.

321 F.2d 221; and the Tenth Circuit, Gaitan v. United States, 10 Cir., 1963, 317 F.2d 494 with those of the Eighth Circuit, Cox v. United States, 8 Cir., 1965, 351 F.2d 280, and the Seventh Circuit, Kapsalis v. United States, 7 Cir., 1965, 345 F.2d 392.

6. See Jones v. United States, 1960, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; Diaz-Rosendo v. United States, 9 Cir., 1966, 357 F.2d 124; Ramirez v. United States, 9 Cir., 1961, 294 F.2d 277; Contreras v. United States, 9 Cir., 1961, 291 F.2d 63; Plazola v. United States, 9 Cir., 1961, 291 F.2d 56. Compare United States v. Konigsberg, 3 Cir., 1964, 336 F.2d 844 and United States v. Mullin, 4 Cir., 1964, 329 F.2d 295. See also United States v. Jeffers, 1951, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59; Wong Sun v. United States, 1963, 371 U.S. 471, 492, 83 S.Ct. 407, 9 L.Ed.2d 441.

It follows that the search and seizure question which Kuhl now seeks to raise was not dealt with on the merits at either the criminal trial, or on the appeal therefrom.

The question remains whether, by failing to raise the search and seizure question on a pretrial motion to suppress evidence, or at the trial, Kuhl has deliberately by-passed procedures available to him in the criminal prosecution and, if so, whether this precludes him from raising the search and seizure question in this section 2255 proceeding.[7] We hold that he has, and that it does. His counsel has effectively waived his claim.

It is urged in the dissent that we should order a hearing on these questions. We think that to do so here, in a case in which a defendant had a fair trial and was represented by competent counsel, would be to reach out to find support for a collateral attack on his conviction when his counsel elected, at the trial, not to assert the claim now made, and that we would be doing so on the basis of the flimsiest kind of allegations. These allegations are flatly contradicted by the record of his trial, which at most merely shows that counsel made a mistake of law. This is retrial by hindsight. We are against it.

In Kuhl's moving papers, the only allegations relating to the issue (apart from a description of the search of the Heisler house) are these:

"1. That the court erred in not ordering a motion to determine the validity of the search of the premises on its own, particularly after petitioner's attorney made a substancial [sic] objection to the search of the house, which brought to the attention of the court that there was a possible gross violation of petitioner's rights involved."

"Petitioner Alleges: That the United States District Court (Hon. Judge Sweigert presiding) erred in not ordering a hearing to determine the validity of the search of petitioner's alleged co-defendants (Edward R. Heisler's) premises located at 1914 Pablo Vista in San Pablo, California, particularly after noting that petitioner's attorney, (Mr. Preovolos) made a substancial [sic] objection to the search of the premises, (1914 Pablo Vista) which brought to the attention of the court that the search of the premises could be a violation of petitioner's rights guaranteed to him by the United States Constitution Amendments Four and Five."

\*   \*   \*   \*   \*   \*

"Petitioner herein submits then, that the District Court erred in overruling his court appointed Attorney's objection to the exploratory search of his alleged co-defendant's premises at 1914 Pablo Vista without ordering a hearing to determine the legality of said search after it was thus brought to the attention of the court."

In support of these claims, Kuhl offered an affidavit of his trial attorney, Mr. Preovolos, reading in pertinent part as follows:

"On March 14, 1962, he filed with said Court on behalf of said defendant, EDWARD C. KUHL, a Motion to suppress evidence seized from defendant's automobile.

At the hearing of said Motion on April 12, 1962, before the Honorable WILLIAM T. SWEIGERT, United States District Judge, he attempted to object to introduction by the Government of evidence seized from the premises of EDWARD HEISLER, defendant's co-defendant, and was prepared to cite authority and fully argue the matter. However, his objection was peremptorily denied by Judge Sweigert; that in view of the Judge's attitude he saw no point in attempting to argue the matter further or to file a further motion to suppress the evidence found in the Heisler house.

---

7. The portion of the district court's order quoted above may be taken as a ruling that Kuhl has been so precluded from now raising the question.

No motion to suppress had been filed prior to hearing on the motion to suppress the evidence seized from defendant's car for the reason that it was not known until the hearing that the Government would attempt to use the evidence seized from the Heisler premises against the defendant Kuhl."

■ The present motion was made in the case in which Kuhl was convicted. The trial court, in considering the motion, was entitled to and did examine the trial transcript. This court has also examined it, on Kuhl's direct appeal (see our opinion, 322 F.2d 582). We have again examined it on this appeal. What does it reveal? It shows:

1. The only times that the question now sought to be raised was even mentioned to the trial court were two. The first time was during a pretrial motion to suppress other evidence taken from Kuhl's car, rather than the evidence taken from Heisler's house, and the only reference then made to a possibility that there might be a question as to the search of the Heisler house is this: A police officer who arrested Heisler and searched his home was on the stand.

"Q. [by government counsel] What, if anything, did you ascertain upon the premises?

"A. We found one room equipped with photography equipment. In this room was a plate with a—

"Mr. Preovolos: Excuse me just a minute. I will object to the question, first of all. As I understand it, they went there to search, to arrest him on a violation of probation.

"Mr. Woelflen: And forgery.

"Mr. Preovolos: I question the right at this point to conduct a search of the premises, if this is the fact.

"The Court: This is the search of a house?

"Mr. Preovolos: That is right, Your Honor.

"The Court: The automobile hasn't come into this yet?

"Mr. Preovolos: Well of course they are going to link up this evidence with the defendant, too.

"The Court: They may do that. They have [sic, may?] have found some probable cause; I don't know."

Questioning by government counsel then continued with no further comment or objection by Kuhl's counsel.

The second time was during the trial, when the same officer was on the stand. On cross-examination by Kuhl's counsel, the following occurred:

"MR. PREOVOLOS: Q. Now, when you arrived at 10:30 a. m., you or someone under your authority had arranged for the fire department to make a visit to the place first, hadn't they?

"A. Yes, sir.

"Q. Was that you that made those arrangements?

"A. Partially.

"Q. And that was a pretense to get into the house, wasn't it?

"MR. WOELFLEN: I object to this as irrelevant, incompetent and immaterial. What bearing has it?

"THE COURT: What is the competency or relevancy of that?

"MR. PREOVOLOS: The breaking into the house? That is the fire department going there first and looking around.

"THE COURT: Yes. Talking about this, are you trying to develop some question of search and seizure?

"MR. PREOVOLOS: Yes, Your Honor.

"MR. WOELFLEN: Wouldn't be applicable to this defendant.

"MR. PREOVOLOS: It may not be applicable to this defendant, Your Honor. I will withdraw the question.

"THE COURT: All right, it's withdrawn."

Mr. Preovolos then continued his cross-examination, and never mentioned the question again, although he did renew his motion to suppress evidence taken from Kuhl's car.

2. Except for these two colloquies, the question was never mentioned, either during the hearing of the motion to suppress, or by way of a separate pretrial motion to suppress the evidence taken from the Heisler house, or by such a motion made at the trial, or by objection or argument at the trial, or at all.

3. During the trial,

"Appellant has had extremely able representation by counsel, both here and below. No question of the sufficiency of the evidence, or error in instructions, is claimed. We find appellant had a fair trial." (322 F.2d at 589)

By examining the trial record, then, the trial court could determine (a) that counsel did not properly raise the question, (b) that on each occasion when he did mention the question, his objection or observation was merely tentative and was dropped, (c) that the judge did not deny an objection, peremptorily or otherwise, (d) that counsel was competent and represented Kuhl effectively (e) that Kuhl had a fair trial, and (f) that Kuhl is clearly guilty. From the moving papers on this motion, and from the trial transcript as well, it also appears, without possibility of contradiction, that both Kuhl and his counsel knew all about the facts before the trial, and could have raised the question either before the trial or at trial or both. Counsel also knew how to do it, if he had wished to. And from counsel's affidavit the court could conclude, as we do, that counsel decided not to raise the question because he "saw no point" in doing so, but that, as the record demonstrates, this was not because, as he now asserts, of any peremptory denial of his objection by the trial judge.

We do not question counsel's good faith in making the affidavit. We assume that he did so without reading the transcript. We assume too, that he was motivated by a commendable desire to aid his former client in his quest for post-conviction relief. But counsel's affidavit concerns matters of record, and that record demonstrates, beyond peradventure, that counsel's recollection is faulty.

His "objection" was not denied by Judge Sweigert, much less "peremptorily denied." On the other hand, the record fully supports counsel's further statement in his affidavit that he "saw no point in attempting to argue the matter further or to file a further motion to suppress the evidence found in the Heisler house," even though, after the hearing of his motion to suppress the evidence seized from Kuhl's car, he certainly did know "that the Government would attempt to use the evidence seized from the Heisler premises against the defendant Kuhl." The record also shows the reason, namely, that he did not think that Kuhl had standing to raise the question. No hearing was or is necessary to ascertain these facts; they are incontrovertibly shown by the record of what happened.

The question of standing, as is shown by the cases cited in footnote 6, supra, was an arguable one. At the most, then, counsel made a mistake of law. We do not think that this is the kind of "mistake" that entitles a party to assert that his counsel did not by-pass orderly procedure and thereby effectively waive his claim that the evidence was unconstitutionally seized. Here, counsel certainly knew the facts. Here, he knew that there was an arguable basis for a motion or an objection, upon fourth amendment grounds. Here, knowing these things, he first tentatively raised the objection, on two occasions, and then on the first occasion abandoned it by failure to insist upon it, and on the second expressly withdrew it. It is seldom that counsel can really "know" that a constitutional objection, on fourth amendment grounds, is good, either as a matter of fact or as a matter of law.[8] He may believe that it is; he

---

8. This court has already indicated, in its opinion affirming Kuhl's conviction, that it is more than arguable that there was probable cause for the search of the Heisler house, and that the search was not unreasonable. See 322 F.2d at 586,

may hope that it is; he may think that it is not. As to any of these views, he may be mistaken. It is for him to decide, whichever of these views he holds, and even if he "knows" that the claim is good, whether he will assert the claim. If he does so, he may be more or less surprised to find that the court does or does not agree with him. If he decides not to do so, his decision is still "an intentional relinquishment or abandonment of a known right or privilege" (Fay v. Noia, 1963, 372 U.S. 391, 439) 83 S.Ct. 822, 849, 9 L.Ed.2d 837. The "known right or privilege", in such a case as this, is the right or privilege of presenting the contention to the court and getting a ruling on it. Orderly procedure and the need for finality in the decision of cases combine to make an intentional failure to do so a waiver of the claim itself. The law does not, in our opinion, make the fact of waiver stand or fall upon such tenuous matters as the extent or accuracy of the lawyer's knowledge of the facts or the law or the sufficiency of the reasons for his action. These are, as this case demonstrates, subjective factors which are highly susceptible to after-the-fact tinkering, either intentional or unintentional.

■■ The federal system, in the rules of criminal procedure, expressly provides a means whereby counsel can raise the issue of unlawful search and seizure (Rule 41(e)), both before and at the trial. Counsel was obviously aware of that procedure. It is counsel's job, not the court's job, to raise the question. He did not do so. He intentionally, whether for a good reason or a poor one, by-passed the orderly procedure established in the federal courts. He thereby waived the point. And no hearing is required to enable the trial court to decide the question. Kuhl himself does not assert that what counsel did was not intentionally done. His position is that the court should have raised the question, had a hearing on it, and decided in his favor, even though counsel

never asked him to. And counsel's present position is no better; he does say that he "saw no point in attempting to argue the matter further or to file a further motion to suppress." The reason he gives is "the Judge's attitude," but the record does not support the reason; it negates it.

What then, would the hearing be about? Would the court take testimony from counsel as to what the real reason was for his doing what he did, and, if it found the reason not satisfactory, proceed to hear a motion to suppress, or to retry the case? Would the court take its own testimony as to whether it "peremptorily" denied a motion never made, or an objection that was dropped, or as to whether its own attitude was such as to justify counsel in "seeing no point" in proceeding? We do not think that it is the function of a motion under section 2255 or of habeas corpus, following a trial on the merits, to get into this kind of second-guessing. We think that to do so denigrates the essential role that the Sixth Amendment assigns to counsel in the trial of criminal cases, and turns a federal criminal trial, with all the safeguards that it provides for the rights of defendants, into a mere hearing preliminary to a section 2255 motion. The Supreme Court has not told us that this is what we must do, and unless and until it does, we are not for doing it.

The cases principally relied upon, Fay v. Noia, 1963, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, and Henry v. State of Mississippi, 1965, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, deal with a different problem—the relationship between state and federal courts, and the natural reluctance of the Supreme Court to be bound by state court disposition, either directly or under the adequate state ground doctrine, of claims of violation of federal constitutional rights of which the Supreme Court and the lower federal courts are the guardians. Here we deal with a

note 4. This, too, could be a reason why counsel dropped the question. And it

strongly suggests that a hearing would be an exercise in futility.

federal criminal trial.[9] Moreover, the federal procedural rules here involved, and here by-passed by Kuhl's counsel—without, so far as appears, any objection by Kuhl—serve precisely the "legitimate interest" in the orderly administration of justice that the *Henry* case says may be served, in relation to federal constitutional claims, by comparable requirements in state courts.

Even if *Henry* is applicable to a section 2255 proceeding, it does not deal with the question we have here. There, the objection was made, but made late. The question was whether the delay was deliberate, as part of a strategy by which counsel hoped to have the best of two worlds, by first letting the evidence in and perhaps getting some benefit from it, and then asserting that it was error to admit it. See the discussion at 379 U.S. 450–451, 85 S.Ct. 564. Here, on the other hand, counsel expressly withdrew the claim.

In Nelson v. People of State of California, 1965, 346 F.2d 73, 81, we said:

"that only counsel is competent to make such a decision, [whether to object to evidence unlawfully seized] that counsel must be the manager of the lawsuit, that if such decisions are to be made by the defendant, he is likely to do himself more harm than good, and that a contrary rule would seriously impair the constitutional guaranty of the right to counsel. (See Rhay v. Browder, 9 Cir., 1965, 342 F.2d 345.) One of the surest ways for counsel to lose a lawsuit is to permit his client to run the trial. We think that few competent counsel would accept retainers, or appointment under the Criminal Justice Act of 1964, to defend criminal cases, if they were to have to consult the defendant, and follow his views, on every issue of trial strategy that might, often as a matter of hindsight, involve some claim of constitutional rights. (See Mitchell v. United States, 1958, 104 U.S.App.D.C. 57, 259 F.2d 787, 793)."

The danger we there saw can only be enhanced if we also require counsel, long after the trial, to appear at a post-conviction hearing and be subjected to examination and cross-examination as to why he did what he did, or failed to do what he did not do, and whether his reasons, if he can remember them, were good or bad. Such a procedure places counsel in the unenviable position where, if he can recall his reasons and they are good, he is hurting his former client, and if he can recall his reasons and they are bad, or even not very good, he is impugning his own professional competence. We doubt that many counsel would be willing to go through such a performance more than once, or indeed at all if they could foresee the possibility.

We think that in a case such as this the only justification, if any, for requiring a hearing as to counsel's failure to raise the question at trial would have to lie in the area of corruption or incompetence of counsel. And in such cases, we would require sufficient factual, rather than conclusionary, allegations to raise serious doubts before we would order a hearing. Neither corruption nor incompetence is asserted here.

We ought not to overlook the traditional and effective manner in which cases are tried. Implicit in every offer of evidence is the question by the judge to opposing counsel, "do you object?" Implicit in counsel's silence is an answer. The waiver on its face, thus, is knowing and express. It would be impertinent for a court to quiz counsel on his knowledge of the legal rights of his client. It would be equally improper for a court to quiz counsel as to his strategy. We cannot insist upon the importance of counsel, as we properly do, and at the same time indulge in a presumption that counsel does not know what he is doing. We certainly should not do so here, where the trial transcript and counsel's own affidavit make it crystal clear that he did know what he was doing.

9. Compare Thornton v. United States, D.C.Cir., 1966, 268 F.2d 822 (decided October 6, 1966).

When counsel goes into a federal court to defend a criminal case, he knows that he is in a court that is there to uphold federal constitutional rights. He knows that, when he has a Fourth Amendment question of search and seizure, the federal system provides a way by which he can get a full hearing. He knows that, if the particular judge is hostile or arbitrary, he has a right to make a record, so that there will be proper review on appeal. He knows that if the court will not let him make a record, that too can be reviewed on appeal. There is no claim, much less a showing, that Kuhl's counsel did not know all of these things. If he then chooses, as Kuhl's counsel did, not to present the question, not to make a record, not to get a ruling, neither he nor his client, absent counsel's corruption or incompetency, should get a second crack at the matter via the section 2255 —habeas corpus route.

Because we hold the foregoing views, we find it unnecessary to express an opinion about the other points presented.

Affirmed.

HAMLEY, Circuit Judge, with whom JERTBERG, BROWNING and ELY, Circuit Judges, concur, dissenting:

Three questions were presented on this appeal, namely: (1) apart from circumstances showing a waiver of his right to do so, is a federal prisoner entitled to raise, in a section 2255 proceeding, a search and seizure question not previously litigated on the merits?; (2) if so, did the district court err in determining without affording Kuhl a hearing, that he had waived that right?; and (3) should denial of section 2255 relief in any event be affirmed on the ground that Kuhl lacked standing to question the search and seizure, which took place at the home of Kuhl's codefendant?

Since an affirmative answer to the first of these questions would require the overruling of previous decisions by this court, this case was reargued en banc. The majority gives a negative answer to the second question, and affirms, without deciding the other questions, I believe the first question, which involves the jurisdiction of the district court, should have been decided before reaching the second question. If decided in the negative, no other question need be decided.

In my opinion, however, the first question should be decided in the affirmative, making it necessary to proceed to the second question. Contrary to the majority, I think the second question should also be decided in the affirmative. This brings me to the third question, which the majority did not need to decide. I would give an affirmative answer to that question and, accordingly, reverse and remand for further proceedings. I now discuss these questions seriatim.

I

As pointed out in the majority opinion, the prior decisions of this court support the determination of the district court that, even where the circumstances do not show an effective waiver, a federal prisoner is not entitled to raise a previously unlitigated search and seizure question in a section 2255 proceeding. The last such decision was rendered in Williams v. United States, 9 Cir., 307 F.2d 366.

In my opinion, that position must be reëxamined in the light of Mapp v. Ohio, 367 U.S. 643, 655, 657, 81 S.Ct. 1684, 6 L.Ed.2d 1081, decided in 1961, and People of State of California v. Hurst, 9 Cir., 325 F.2d 891, decided in 1964.

In *Mapp*, which was a direct review of a decision of the Supreme Court of Ohio, the Supreme Court of the United States made it clear that the rule first announced in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, excluding, in a federal prosecution, the use of evidence secured through an illegal search and seizure, is not a mere rule of evidence but is required by the Fourth Amendment. The Court further held that, through the operation of the Due Process Clause of the Fourteenth Amendment, this same exclusionary rule is also enforceable in state prosecutions.

In the light of that pronouncement this court, in *Hurst*, held that the question of whether a state judgment of con-

viction must be set aside because evidence obtained as the result of an illegal search and seizure was admitted at the trial, is cognizable in the federal courts on an application for a writ of habeas corpus.[1] Thus, if Kuhl had been convicted in a state court he would be entitled, in a federal habeas corpus proceeding, to a determination of whether articles admitted in evidence against him had been obtained as the result of an unlawful search and seizure, absent the question of waiver to be discussed below.[2]

The fact that Kuhl was actually convicted in a federal court should not preclude him from obtaining similar collateral relief by means of a section 2255 proceeding. The exclusionary rule applicable in federal prosecutions derives from the same constitutional sanction as the exclusionary rule applicable in state prosecutions—the Fourth Amendment. Since, under *Hurst*, it is that constitutional sanction, as applied to the states under the Fourteenth Amendment, which

entitles a state prisoner to federal habeas corpus, it also ought to entitle a federal prisoner to the like remedy of section 2255.

Before section 2255 was enacted in 1948, a federal conviction obtained in violation of the Constitution could be challenged in federal habeas corpus. See Fay v. Noia, 372 U.S. 391, 409, 83 S.Ct. 822, 9 L.Ed.2d 837. A section 2255 motion is the counterpart of habeas corpus.[3] It would seem to follow that the same relief should be available to a federal prisoner under such a motion as is now available to a state prisoner under habeas corpus, or as would be now available to a federal prisoner but for the enactment of section 2255.[4]

I recognize that federal habeas corpus is the only means available to a state prisoner to get his constitutional search and seizure question before a federal trial court, whereas a federal prisoner can get that question before a federal trial court at his criminal trial. As noted in

1. As indicated in note 3 of the majority opinion, the reversal of *Hurst*, on other grounds, does not undermine our ruling in that case that federal habeas corpus is available to a state prisoner in questioning state application of the exclusionary rule.

Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601, relied upon by the Supreme Court in reversing our decision in *Hurst*, was itself a habeas corpus proceeding. The fact that, in *Linkletter*, the Court concerned itself exclusively with the question of retroactivity indicates that, apart from retroactivity, habeas corpus was regarded as an available means for a state prisoner to raise a search and seizure question.

In another habeas corpus proceeding decided since *Hurst*, this court has dealt with the application of the exclusionary rule in state prosecutions. See Nelson v. People of State of California, 9 Cir., 346 F.2d 73. Since Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, at least three other United States courts of appeals have followed a like course in habeas corpus proceedings. See Maxwell v. Stephens, 8 Cir., 348 F.2d 325; Reeves v. Warden, Maryland Penitentiary, 4 Cir., 346 F.2d 915; United States ex rel. Mancini v. Rundle, 3 Cir., 337 F.2d 268.

2. Assuming, of course that he had exhausted state remedies still open to him. See 28 U.S.C. § 2254 (1964).

3. Sanders v. United States, 373 U.S. 1, 13–15, 83 S.Ct. 1068, 1076, 10 L.Ed.2d 148; Hill v. United States, 368 U.S. 424, 427, 82 S.Ct. 468, 7 L.Ed.2d 417; United States v. Hayman, 342 U.S. 205, 214–219, 72 S.Ct. 263, 96 L.Ed. 232. In *Sanders*, 371 U.S. at page 13, 83 S.Ct. at page, 1076, the Court said:

"In United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232, the prisoner vigorously contended that § 2255 was an unconstitutional suspension of the writ of habeas corpus. The Court avoided the constitutional question by holding that § 2255 was as broad as habeas corpus." (Footnote omitted.)

4. If it should be thought that a search and seizure question, which may be examined on habeas corpus, may not be examined in a section 2255 proceeding, this still ought not to preclude a federal prisoner from obtaining collateral consideration of the question. Section 2255 provides that habeas corpus remains available to a federal prisoner if the remedy by motion is "inadequate or ineffective." See *Sanders*, at 14, 83 S.Ct. at 1076.

the majority opinion, it has been suggested that, for this reason, the federal courts would be justified in granting such relief to state prisoners in habeas corpus, while denying it to federal prisoners in section 2255 proceedings.[5]

Whatever the practical merits of that suggestion may be, it seems to me that the fact that section 2255 is, and for the sake of constitutionality must be, the full equivalent of habeas corpus, prevents adoption of such a course. The impairment of finality of federal judgments, inherent in opening section 2255 to search and seizure questions, is no greater than that suffered by state judgments under the rule of *Mapp,* as applied in *Hurst.* If the impairment of the finality of state convictions must be tolerated for the sake of the Constitution, the like impairment of the finality of federal convictions should be similarly endured.[6]

In my opinion, therefore, and subject to considerations of the kind referred to in note 6, it should be held that a federal prisoner may obtain a determination in a proceeding under section 2255, as to whether evidence should have been excluded because obtained as the result of an unreasonable search and seizure, un-

less he has waived that right. Williams v. United States, 9 Cir., 307 F.2d 366, and other decisions of this court expressing a contrary rule, should to that extent be overruled.

Under my view of the law, therefore, the section 2255 motion should not have been denied on the ground that such a motion is not a proper vehicle for attacking the admission of evidence obtained as the result of an unlawful search and seizure.

At the very least, however, the majority should have decided the question. It relates to the jurisdiction of the district court and if decided in the negative is dispositive of the case. It was the issue which led to the en banc hearing. A ruling on that issue would be helpful to the bench and bar of the Ninth Circuit, especially since the other circuits are divided on the question.[7] Unless decided now, we must go through this en banc procedure again the next time the problem arises because the overruling of prior decisions of our court is involved.

II

The majority holds that even if a search and seizure question may ordinarily be raised in a section 2255 pro-

5. See Amsterdam, Search, Seizure, and Section 2255: A Comment, 112 U. of Pa. L.Rev. 378 (1964).

6. It is possible to overestimate the extent to which federal criminal convictions may be unsettled by the availability of section 2255 to test search and seizure questions. It is the rule that questions which can normally be raised under section 2255, but which, in a particular case, have already been fully adjudicated against the defendant in the criminal prosecution, may not be relitigated in a section 2255 proceeding, absent some circumstances such as newly-discovered evidence warranting reëxamination of the issue. See Marcella v. United States, 9 Cir., 344 F.2d 876, 880 (sufficiency of indictment); Frye v. United States, 7 Cir., 337 F.2d 385, 386 (use of perjured testimony); Lampe v. United States, 110 U.S.App.D.C. 69, 288 F.2d 881 (coerced confession). See, also, Amsterdam, note 7, supra, 380–381.

On the other hand, should competent counsel for a defendant fail to raise his search and seizure questions at the crim-

inal prosecution, he will run the risk of having section 2255 relief foreclosed under the principle, to be discussed below, that collateral relief is barred if there has been a deliberate by-passing of procedures available at the criminal trial.

If the considerations referred to above do not, under the circumstances of a particular case, foreclose section 2255 examination of a search and seizure question, the applicant must still win on the merits of that question before his criminal conviction is unsettled.

7. The decisions of the other circuits are collected in note 5 of the majority opinion. It is worth observing, however, that while the most recent decision cited in that footnote (Thornton v. United States, D.C. Cir., 1966, 368 F.2d 822) is there placed with two other decisions which hold section 2255 not an available remedy, it is readily distinguishable from the *Kuhl* case, because in *Thornton,* unlike our case, the accused had obtained an adjudication of the search and seizure issue at his criminal trial.

ceeding, it may not be raised here because Kuhl "has deliberately by-passed" procedures for raising that question which were available to him in the criminal prosecution.[8]

While the majority thus correctly adopts, in this section 2255 proceeding, the "deliberate by-pass" terminology theretofore used by the Supreme Court and this court only in proceedings involving state prisoners,[9] I think it can be demonstrated that the majority does not apply the proper criteria for determining whether there was a deliberate by-passing.

In Fay v. Noia, 372 U.S. 391, 438–439, 83 S.Ct. 822, 849, which was a habeas corpus proceeding involving a state prisoner, the Supreme Court stated, as follows, the criteria for determining whether there was a deliberate by-passing of procedures for raising a constitutional question in the criminal prosecution:

"We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

"But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in Johnson v. Zerbst, 304 U.S. 458, 464 [58 S.Ct. 1019, 1023, 82 L.Ed. 1461]—'an intentional relinquishment or abandonment of a known right or privilege'—furnishes the controlling standard." [10]

In my opinion, the same criteria should be applied in section 2255 proceedings involving federal prisoners. If as the Supreme Court has said, section 2255 is as broad as habeas corpus, and must be if a grave constitutional question is to be avoided,[11] it necessarily follows that only that which would preclude consideration of a search and seizure question in habeas corpus will preclude consideration of such a question under a section 2255 motion. Thus the established criteria applicable in federal courts with reference to state prisoners—"an intentional relinquishment of a known right or privilege" provides the only basis on which failure to make objection in the criminal trial can defeat a section 2255 applicant's right to raise a search and seizure question.

In my view the Kuhl record does not indisputably establish that, in failing effectively to object to the introduction in evidence of articles seized at the home and garage of his co-defendant, Edward R. Heisler, Kuhl or his attorney acting for him intentionally relinquished a "known" right to object to reception of those articles on the ground that they had been obtained as a result of an unreasonable search and seizure.

The facts of record pertaining to the failure of Kuhl or his counsel effectively to make such an objection by way of a pretrial motion to suppress, or at the trial when the articles were offered in evidence, are fully set out in the majority opinion. To me, the most significant facet of this factual background is the colloquy which occurred at the trial during cross-examination of the officer who had searched Heisler's home. While this

8. See the majority's statement of the question immediately preceding footnote reference 7 in the majority opinion.

9. See Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837; Henry v. State of Mississippi, 379 U.S. 443, 450, 85 S.Ct. 564, 13 L.Ed.2d 408; Nelson v. People of State of California, 9 Cir., 346 F.2d 73, 77, 81–82.

10. Fay v. Noia involved a coerced confession. But the deliberate by-passing test of that case was later applied by the Supreme Court in Henry v. State of Mis-

sissippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, which involved an unlawful search and seizure. Henry v. State of Mississippi was not a collateral proceeding, but was a direct review of the Supreme Court of Mississippi. But, based on Fay v. Noia, and Henry v. State of Mississippi, this court applied the deliberate by-passing test in Nelson v. People of State of California, 9 Cir., 346 F.2d 73, 77, 81–82, a habeas corpus proceeding.

11. See note 3, above.

colloquy is quoted in the majority opinion, I repeat it here for purposes of convenient discussion:

"MR. PREOVOLOS: Q. Now, when you arrived at 10:30 a. m., you or someone under your authority had arranged for the fire department to make a visit to the place first, hadn't they?

"A. Yes, sir.

"Q. Was that you that made those arrangements?

"A. Partially.

"Q. And that was a pretense to get into the house, wasn't it?

"MR. WOELFLEN: I object to this as irrelevant, incompetent and immaterial. What bearing has it?

"THE COURT: What is the competency or relevancy of that?

"MR. PREOVOLOS: The breaking into the house? That is the fire department going there first and looking around.

"THE COURT: Yes. Talking about this, are you trying to develop some question of search and seizure?

"MR. PREOVOLOS: Yes, Your Honor.

"MR. WOELFLEN: Wouldn't be applicable to this defendant.

"MR. PREOVOLOS: It may not be applicable to this defendant, Your Honor. I will withdraw the question.

"THE COURT: All right, it's withdrawn."

This colloquy demonstrates that Kuhl's counsel was attempting, by way of cross-examination, to develop a factual background for interposing an objection to reception of the articles seized on the ground of unreasonable search and seizure; that the trial court inquired as to competency and relevancy; that when Kuhl's counsel stated his purpose, Government counsel stated, in substance, that Kuhl did not have standing to question a search of Heisler's home, and a seizure made therein; and that Kuhl's counsel

then indicated his own doubt as to whether Kuhl had standing and therefore withdrew the question which might have provided a factual basis for such an objection.

I agree with the majority that, insofar as the record indicates, this view of Kuhl's counsel that his client did not have standing to object to the search and seizure at the home of another provides the only explanation for the failure of counsel to make such an objection. But in determining whether a failure to make an objection of this kind evidences a deliberate by-passing of trial procedures, neither Kuhl nor the Government should have been confined to the trial record. This much is made clear by Henry v. State of Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408, where the cause was remanded for an evidentiary hearing. In our case no evidentiary hearing was held on the deliberate by-pass question, nor was even any issue drawn concerning it, since the district court denied the application without calling for a return.

But if we assume that, had a return to the application been called for, the Government would have taken the position that Kuhl had deliberately by-passed state procedures, and if we further assume that, at an evidentiary hearing held to resolve the issues so drawn, the only explanation for the failure to object was the view of Kuhl's counsel that his client did not have standing to object, it would be my opinion that a deliberate by-passing in the sense intended by Fay v. Noia and Henry v. State of Mississippi was not shown.

The question of whether Kuhl had standing to object to a search of his co-defendant's house and the seizure therein, is one of law. If, as a matter of law, Kuhl did have standing, then Kuhl's counsel, in refraining from making such an objection solely because of his doubts as to Kuhl's standing, was proceeding under a mistake of law.[12]

12. It may also be observed that, on the same assumption as to the state of the law on the question of standing, this was an excusable mistake of law on the part of Kuhl's counsel. It was Government counsel which first expressed the view

I do not see how the failure to make an objection at the trial because of counsel's erroneous view that, as a matter of law, his client does not have standing to object, can be regarded as "an intentional relinquishment or abandonment of a *known* right or privilege." The right or privilege we are discussing is not, as the majority states, the merely procedural right to stand up in court and make an objection, however groundless. It is the constitutional right or privilege to exclude from the trial, evidence obtained as a result of an unlawful search and seizure. Kuhl's counsel thought that Kuhl did not have that right or privilege under the circumstances of this case—therefore it was not a "known" right insofar as Kuhl is concerned. Hence no intentional relinquishment of a "known" constitutional right occurred, insofar as the record reveals.[13]

In stating that there was a deliberate by-passing, notwithstanding that the failure to object may have been due to a mistake of law, the majority must therefore be applying, as to federal prisoners, a different criterion of deliberate by-passing, than Fay v. Noia requires in the case of state prisoners. Yet the reasons advanced by the majority for holding that a failure to object because of a mistake of law evidences deliberate by-passing would, in logic, be equally applicable in federal habeas corpus by a state prisoner. In view of this circumstance I am afraid that the majority view is likely to be construed as indicating dissatisfaction with the Fay v. Noia criteria and a determination, therefore, to limit its application to proceedings by state prirsoners. This, in turn, brings into question the constitutionality of section 2255, as so applied.

The majority questions what could be accomplished at an evidentiary hearing on this by-pass question. I would answer that, under my view of the law, Kuhl does not need a hearing on that question because, as the record now stands, a deliberate by-passing is negatived. But since the Government has not conceded that the record affords the only explanation for Kuhl's failure to object, it is entitled to a hearing on that issue assuming that an issue is drawn thereon by the Government's return to a show cause order. It may very well be that the Government cannot prove that the failure to object was due to some reason other than as indicated on the record. If it cannot then, on the record as now made, it should be held that Kuhl has not been precluded from raising the search and seizure question in this proceeding.

### III

The Government argues that Kuhl does not have standing to raise the search and seizure question because he was not present at the Heisler premises at the time of the search, he did not reside on the premises, and there is no evidence showing he was connected with the renting of the premises. If this argument is meritorious, then the district court order denying the section 2255 motion must be affirmed, notwithstanding the fact that this was not the ground relied upon by the district court. See Diaz-Rosendo v. United States, 9 Cir., 357 F.2d 124, 130. As indicated above, the majority did not reach that question—but I do.

A party will not be heard to claim a constitutional protection unless he "* * * belongs to the class for whose sake the constitutional protection is given." People of State of New York ex rel. Hatch v. Reardon, 204 U.S. 152, 160, 27 S.Ct. 188, 190, 51 L.Ed. 415. Rule 41(e), Federal

---

that Kuhl did not have standing. The Government still thinks the trial court was right and, on this appeal, vigorously argues that Kuhl did not have standing. Even the majority states that the question "was an arguable one." I do not wish to imply, however, that it would necessarily make a difference if the mis-

take of law by Kuhl's counsel was inexcusable.

13. The majority places mistakes of fact and law in the same category, holding that only where corruption or incompetence of counsel is shown, may a failure to object escape the label of a deliberate by-passing.

Rules of Criminal Procedure, governing the suppression of evidence acquired in violation of the Fourth Amendment, applies that principle. It provides that only a person "aggrieved" by an unlawful search and seizure may move for the suppression of the articles seized. In order to qualify as a person "aggrieved" by an unlawful search or seizure, one must have been a victim of the search or seizure. Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 4 L.Ed.2d 697.

The Fourth Amendment guarantees the right of the people to be secure in their " * * * persons, houses, papers, and effects, * * * " against unreasonable searches and seizures. Since the protection thus afforded includes not only "persons" and "houses," but also "papers, and effects" it has long been the established rule that a person has standing under Rule 41(e), as a person aggrieved, to challenge a search of premises and seizure of articles therein, if he claims either a substantial possessory interest in the premises searched, or ownership or possession of the seized property. See Jones v. United States, at 261, 80 S.Ct. 725. The argument that one who did not claim an interest in the premises searched but only ownership or possession of the property seized, had no standing to challenge the search of premises which led to the discovery of that property, was rejected in United States v. Jeffers, 342 U.S. 48,[14] 72 S.Ct. 93, 96 L.Ed. 59.

The rule giving one who claims ownership or possession of seized articles standing to challenge the search which led to

such seizure was modified, in Jones, to relieve a defendant of the need of incriminating himself by claiming ownership or possession of articles, in order to have standing, in those cases where, either under the terms of the indictment or otherwise, possession of the articles seized was an essential element of the crime for which he was being prosecuted.

In Jones, which was a narcotics case, the defendant was not charged with possession, but with purchasing, selling, dispensing and distributing narcotics in violation of 26 U.S.C. § 4704(a), and with facilitating the concealment and sale of narcotics in violation of 21 U.S.C. § 174. As the Supreme Court pointed out, however, while possession was not charged in the indictment, both statutory provisions under which Jones was prosecuted permit conviction upon proof of the defendant's possession of narcotics, and in the case of 26 U.S.C. § 4704(a), of the absence of the appropriate stamps. In holding that, under these circumstances, Jones had standing to question the search which led to the seizure of the narcotics, the Supreme Court first stated (362 U.S. page 264, 80 S.Ct. page 733) that in cases where the indictment itself charges possession, " * * * the defendant in a very real sense is revealed as a 'person aggrieved by an unlawful search and seizure' * * * " Upon this premise, the Court ruled that in a narcotics case where possession is not charged but is nevertheless the critical element under the statutory presumption, the defendant should likewise be accorded standing.[15]

14. The Supreme Court there said (page 52, 72 S.Ct. page 95):

"The Government argues, however, that the search did not invade respondent's privacy and that he, therefore, lacked the necessary standing to suppress the evidence seized. The significant act, it says, is the seizure of the goods of the respondent without a warrant. We do not believe the events are so easily isolable. Rather they are bound together by one sole purpose— to locate and seize the narcotics of respondent. The search and seizure are, therefore, incapable of being untied.

To hold that this search and seizure were lawful as to the respondent would permit a quibbling distinction to overturn a principle which was designed to protect a fundamental right."

15. As to this the Supreme Court said (362 U.S. at pages 264–265, 80 S.Ct. at page 733):

"Rule 41(e) should not be applied to allow the Government to deprive the defendant of standing to bring a motion to suppress by framing the indictment in general terms, while prosecuting for possession." (Footnote omitted.)

The Government cites Ramirez v. United States, 9 Cir., 294 F.2d 277, 281, decided after *Jones,* as holding that in order to qualify as a person aggrieved there must still be shown a possessory interest in the place searched.

While *Ramirez* involved a narcotics charge under 21 U.S.C. § 174, the seizure complained of was not of narcotics but of federal advance funds found in the purse of the defendant's wife. He was not charged with possession of those funds and the statutory presumption provided in section 174 did not apply to possession of those funds. Both the defendant and his wife at all times asserted that the money belonged to the wife. It was under these circumstances, wholly different from those present in *Kuhl,* that we held that the defendant must claim ownership or possession of the seized property (not, as the Government says, that the defendant had to show a possessory interest in the place searched) in order to have standing.

The Government also calls attention to the holding, in Wong Sun v. United States, 371 U.S. 471, 492, 83 S.Ct. 407, 419, that the seizure of heroin from Johnny Yee " * * * invaded no right of privacy of persons or premises which would entitle Wong Sun to object to its use at his trial."

Wong Sun was not charged with possession of narcotics, but with concealing, transporting and facilitating the transportation and concealment of narcotics in violation of 21 U.S.C. § 174. Nor does it appear from the opinion of the Supreme Court that the Government sought to prove the transportation and concealment charge by establishing that he had constructive possession of the narcotics taken from Yee's home, thus giving application to the statutory presumption. Under these circumstances the rule of *Jones,* pertaining to standing based on a Government claim of possession, had no application. And since Wong Sun claimed no interest in Yee's premises nor in the narcotics seized, no right of privacy belonging to him was invaded.

Moreover, the only contention that was made as to the impropriety of the seizure from Yee was that the seizure was tainted by the fact that the officers learned of Yee as a result of an unlawful search of the establishment of a third person, James Wah Toy. The court held that this taint rendered the evidence inadmissible as against Toy. It did not render the evidence inadmissible against Wong Sun, the Court held, because the latter's privacy was not invaded when the officers made the unlawful search of Toy's place, which search resulted in no seizure of narcotics but only in obtaining information concerning Yee.

The ruling in *Jones,* pertaining to the standing of one who is being prosecuted for possession of an article to challenge the search which led to its seizure is not undermined by the fact that the Court gave, as an additional ground for standing, Jones' legitimate presence on the premises where the search was conducted. In Contreras v. United States, 9 Cir., 291 F.2d 63, 65, this court gave full force and effect to the possession aspect of the *Jones* decision, notwithstanding the alternative ground referred to above. See, also, Simpson v. United States, 10 Cir., 346 F.2d 291, 295, on petition for rehearing, in which *Contreras* was cited and followed.

But the United States argues that narcotics cases are *sui generis,* and that the rule announced in *Jones* manifests special recognition of the problem created by the statutory presumption arising from the possession of narcotics, which should not be extended to cases such as *Kuhl,* where no such problem is present. The Third Circuit has accepted this argument. See United States v. Konigsberg, 3 Cir., 336 F.2d 844, 847. On the other hand, in United States v. Mullin, 4 Cir., 329 F.2d 295, 296, where the charge for possessing non-taxpaid whiskey in violation of the Internal Revenue Code, 26 U.S.C. § 7206 (4), involved no statutory presumption arising from possession, the court held, on the authority of *Jones,* that the charge of possession was enough to accord standing.

While *Jones* related to narcotics charges concerning which possession gives rise to incriminating presumptions, I do not believe the rule there announced is limited to cases where such a presumption is involved. The reason given by the Court for removing the requirement that a defendant, to gain standing, must claim ownership or possession of the article, was that it places the defendant in a dilemma and puts the Government in the inconsistent position of convicting because of possession while asserting that the defendant did not have the possession required to give standing.

These reasons are equally applicable whether possession is charged in the indictment as an essential element of the crime or, lacking such charge, is nevertheless a critical factor because of a statutory presumption arising from possession. The Supreme Court recognized this when, as noted above, it explicitly stated in *Jones* that one who is charged in the indictment with possession of an article seized has standing to question such seizure. Kuhl was charged with possession of the aluminum plates and photographic negatives seized at the Heisler residence.

The Government did not undertake to prove that Kuhl had actual possession of these articles. It contended that he had constructive possession of them because they were in the actual possession of his co-conspirator, Heisler, at the latter's home and garage and Kuhl had access, by invitation to those premises. Thus, the Government reasoned, Kuhl had the power and intention at any given time to exercise dominion or control over those articles. The jury was so instructed.

On the question of standing, the Government makes no point of the fact that the possession proved against Kuhl was constructive rather than actual. I nevertheless consider the question of whether this should make a difference.

We do not have far to look for the answer. *Jones* itself was a constructive

possession case. Jones was present, apparently as an invited guest, in the apartment of another when the search of that apartment was made and the narcotics were seized. But the narcotics were not then on Jones' person, nor in his immediate vicinity. They were found in a bird's nest in an awning just outside a window in the apartment. The *Jones* opinion contains no discussion of whether standing is affected by the fact that the possession was constructive rather than actual. However, it is fair to assume that if this circumstance would alone have been sufficient to preclude standing, the Court would have so ruled, thereby requiring affirmance rather than reversal.[16]

This court, en banc, recently dealt with this precise point in Diaz-Rosendo v. United States, 9 Cir., 357 F.2d 124, 132–133, in explaining the proper basis for a ruling on standing made in our earlier case of Plazola v. United States, 9 Cir., 291 F.2d 56.

In *Plazola*, federal law enforcement officers searched an automobile driven by Plazola's co-defendant Singh, and seized marijuana found therein. Plazola was not in the automobile at the time and apparently had no interest in the vehicle. He was charged with importing, concealing and facilitating the transportation of that marijuana. In obtaining Plazola's conviction, the Government relied upon the theory that Plazola had constructive possession of the marijuana in Singh's car. Holding that this was sufficient to give Plazola standing to challenge the seizure from Singh's automobile, we said, in *Diaz-Rosendo* (at 357 F.2d at page 133):

"The record discloses that in obtaining Plazola's conviction the Government relied upon the theory that Plazola had constructive possession of the marijuana in Singh's car. Instructions offered by the Government on the subject of constructive possession, and on that part of 21 U.S.C. § 176a, quoted supra, were given to the jury. In view of these facts this court properly held

16. See, also, United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59, where the defendant had, without their knowledge, secreted narcotics in an apartment occupied by two of his aunts.

that Plazola had standing for the purpose of challenging the validity of the search of Singh's car." [17]

In my opinion, Kuhl's standing to question the search and seizure is not affected by the fact that his possession of the articles was constructive rather than actual.

I am therefore of the view that the district court order denying the section 2255 motion cannot be sustained on the ground that Kuhl did not have standing to question the search at the Heisler premises and the seizure there of the aluminum plates and photographic negatives referred to in the indictment.[18]

I would reverse the order denying the section 2255 application and remand the cause for further proceedings.

---

17. With regard to the question of standing in the *Diaz-Rosendo* case itself, we held that the defendants did not have standing to question the search of a coconspirator's automobile in which narcotics were seized, because the defendants claimed no interest in that automobile and, under the circumstances of that case, their conviction did not flow from any claim or proof that, at the time of the search, they possessed the narcotics which were seized. The latter circumstance distinguishes *Diaz-Rosendo* from *Kuhl*, where conviction did flow from proof that the defendant had constructive possession of the articles seized.

18. It is not necessary to decide whether Kuhl has standing to challenge the search and seizure of other articles obtained at the Heisler residence. Without the aluminum plates and photographic negatives referred to in the indictment, the Government has no case against Kuhl.